[L. A. No. 805. In Bank.—February 27, 1900.]

JAMES W. BYRNÉ et al., Appellants, v. JOHN H. DRAIN, Street Superintendent of the City of Los Angeles, Respondent.

Municipal Corporations—Control of Charter by General Laws—Construction of Constitution — Suspension of Charter Provisions.—Section 6 of article XI of the constitution as it stood prior to the amendment of 1896, providing that "cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by the authority of this constitution, shall be subject to and controlled by general laws," is not to be construed as providing that charter provisions shall be repealed by a general law upon the same subject matter, but only that the operation of the inconsistent charter provisions shall be suspended during the paramount operation of the general law.

Id.—Amendment of Constitution—Exception of Municipal Affairs—Retrospective Operation—Restoration of Charter Provisions.—The amendment of 1896 to section 6 of article XI of the constitution, inserting the words "except in municipal affairs," was retrospective in its operation, and applied to all existing charters. It had the effect to remove the paramount control of general laws in respect to municipal affairs, and to restore the operation of municipal charters in respect to such affairs, which were suspended by general laws prior to that amendment.

Id.—Opening and Widening Streets—General Law of 1899—Charter of Los Angeles.—The opening and widening of streets are "municipal affairs" within the meaning of the constitution; and the provisions of the charter of Los Angeles on that subject matter, which were suspended by the general law of March 6, 1889, were relieved from the control of that statute by the amendment of 1896 to section 6 of article XI of the constitution.

Id.—Void Assessment under General Law.—The general law of March 6, 1889, having ceased to be operative in the city of Los Angeles, in 1896, an assessment thereafter made in that city based upon proceedings taken under the general law, and not under the charter, is void.

Injunction—Void Sale and Deed—Cloud on Title.—An injunction will not be granted to restrain the street superintendent of the city of Los Angeles from selling real property in that city under a void sale to satisfy a void assessment for opening a street in proceedings taken under the general law in 1898. His deed under such sale would be void, and would cast no cloud upon the plaintiff's title.

Id.—Pleading—Multiplicity of Suits.—A mere naked averment in the complaint that the granting of the injunction will prevent a multiplicity of suits, which does not fairly appear from the nature of the subject matter, or from any facts averred, is not a sufficient ground to sustain the injunction. The fact that the owner of the land might be compelled to defend his title, or to prosecute an action to quiet an adverse claim, cannot support an injunction, but the fact that he may successfully do either is ground against the injunction.

APPEAL from a judgment of the Superior Court of Los Angeles County. Lucien Shaw, Judge.

The facts are stated in the opinion of the court.

John W. Mitchell, for Appellants.

The general law for opening and widening of streets merely suspended, and did not repeal, the provisions of the charter of Los Angeles under the operation of the constitution prior to the amendment of 1896, and the charter provisions were revived under the effect of that amendment. (*Bodefeld v. Reed*, 55 Cal. 299; *Lewis v. Clerk Santa Clara Co.*, 55 Cal. 604; *Seattle Coal etc. Co. v. Thomas*, 57 Cal. 197; *Smith v. His Creditors*, 59 Cal. 267; *Austin v. Caverly*, 10 Met. 332.) The amendment of 1896 applies to all existing charters, and the municipal laws now control in all municipal affairs. (*Morton v. Broderick*, 118 Cal. 486; *Popper v. Broderick*, 123 Cal. 456.) Injunction lies to prevent the sale of land improperly assessed for the opening of streets. (High on Injunctions, secs. 377, 539, 554.)

Walter F. Haas, for Respondent.

The charter is only a statute of this state, and is repealed by necessary implication by the operation of a general law of the state inconsistent therewith, and providing a full scheme for the same subject matter. (23 Am. & Eng. Ency. of Law, 479,

492; *Dillon v. Bicknell,* 116 Cal. 111; *Malone v. Bosch,* 104 Cal. 683; *People v. Sands,* 102 Cal. 18; *Miller v. Curry,* 113 Cal. 644; *Third Nat. Bank of St. Louis v. Harrison,* 8 Fed. Rep. 721; *The Chase,* 14 Fed. Rep. 854.) The charter provisions of Los Angeles were superseded by the inconsistent act of March, 1889, providing a new and general law in reference to the opening and widening of streets. (*Davies v. Los Angeles,* 86 Cal. 39.) The insolvency cases are inapplicable. Congress could not repeal a state law. But a state law may repeal by implication another statute. A repealed law is not revived by the cessation of the operation of the repealing law. (*People v. Hunt,* 41 Cal. 435.) The amendment to the constitution did not revive the repealed part of the charter of Los Angeles. (*Thomason v. Ruggles,* 69 Cal. 465.) If the statute of 1889 is inoperative in Los Angeles, the proceedings thereunder are void, and no cloud upon title can be cast thereunder, and upon that supposition injunction will not lie. (*Luco v. Brown,* 73 Cal. 3; 2 Am. St. Rep. 772; *Dean v. Davis,* 51 Cal. 407; *Gates v. Lane,* 49 Cal. 266; *Hartman v. Reed,* 50 Cal. 485; *Williams v. Corcoran,* 46 Cal. 553; *Lick v. Ray,* 43 Cal. 83; *Lent v. Tillson,* 72 Cal. 404.)

HENSHAW, J.—This action was for an injunction to restrain the street superintendent of the city of Los Angeles from selling certain real property of the plaintiffs to satisfy an assessment levied by the municipal authorities in the matter of the opening of a street. The proceedings for the street opening were begun in September, 1898, and were conducted under the provisions of the general law for the opening and widening of streets. (Stats. 1889, p. 70.) The charter of the city of Los Angeles contains full provisions touching the same subject matter, which provisions differ radically from those of the general street law. (Charter of Los Angeles, secs. 148-89.) These facts are made to appear by the complaint, and the primary question raised on demurrer and thus presented for consideration is whether, at the time of the institution and prosecution of these proceedings, the provisions of the city charter or the provisions of the statute of 1889 constituted the controlling law. If the latter control, then the proceedings are admittedly valid; if the former, then the proceedings are void upon their face.

The charter of the city of Los Angeles was adopted on January 31, 1889. At that time the constitution provided: "Cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, shall be subject to and controlled by general laws." (Const., art. XI, sec. 6.) There was no general law upon the subject of the opening of streets until March 6, 1889, when the statute under which these proceedings were had was approved. In 1896, the above-quoted section 6 of article XI of the constitution was amended so that it now reads, and read at the time of the initiation of the proceedings for opening the street: "Cities and towns heretofore or hereafter organized, and all charters thereof framed or adopted by authority of this constitution, except in municipal affairs, shall be subject to and controlled by general laws." From January 31, 1889, until the passage of the act of March 6, 1889, it is admitted that the provisions of the charter of the city relative to these matters were in full force and effect. After the passage of the act of March 6, 1889, it is conceded that they ceased to be operative unless restored by the terms of article XI, section 6, as amended.

By respondent it is contended that the effect of the adoption of the general statute of March 6th was absolutely to extinguish, annul, and repeal the charter provisions. By appellant it is insisted that, since the charter provisions were valid and in force when the charter became the organic law of the city, the effect of a general statute upon those valid provisions under the very terms of the constitution was not to work a repeal, but to effect merely a suspension of their operation—to subject them to the control of such general law while it remained in operation. This was the view taken by the learned judge of the trial court in passing upon the demurrer, and we think it unquestionably sound. It is to be borne in mind that the case which we are considering is not one where the provisions of a charter, when the charter becomes a law, are in conflict with existing general laws, but it is the case of charter provisions admittedly valid at the time of their adoption coming in conflict with the provisions of a general law subsequently passed. The constitution does not declare that the provisions of the charter under such circumstances are repealed or annulled. It declares merely that

the charter provisions shall be subject to and controlled by general laws. As was well said by the trial judge in passing upon the demurrer: "The word 'subject,' when used as an intransitive verb, means 'to become subservient to'; and as a transitive verb it means 'to cause to become subject or subordinate.' The word 'control' is defined as follows: 'To exercise a directing, restraining, or governing influence over; direct; counteract; regulate.' (Standard Dictionary.) Neither of these terms is used to express the idea of repealing, extinguishing, or doing away with. Nothing in the context indicates such a meaning. The very idea of being subject to or controlled by a higher power or law necessarily implies the continued existence of the thing controlled or subjected so long as the control or subjection continues. That which is extinguished, repealed, or destroyed cannot be said to be afterward under control or subjection." The situation thus presented is not dissimilar to that which obtained during the existence of the national bankruptcy act. It was competent for this state to pass an insolvency act while the bankruptcy act of the United States was in force, but the operation of the state law was suspended, and the state law was controlled by the federal act. (*Seattle Coal etc. Co. v. Thomas,* 57 Cal. 197.) It is similar to the condition of things that exists when a state law providing for the inheritance by aliens of property within its domain is in conflict with the treaty regulations of the United States upon the same subject matter. It is uniformly held, not that the state laws are abrogated or repealed, but that they are suspended and controlled by the treaty during the period of its existence. (*De Geofroy v. Riggs,* 133 U. S. 258; *Blythe v. Hinckley, ante,* p. 431.)

By the above-quoted amendment to the constitution in 1896, we think it clear that the provisions of the charter of Los Angeles touching upon this matter were relieved from the control of the statute of March 6th. The amendment was retrospective, and applied to all existing charters. (*Morton v. Broderick,* 118 Cal. 486; *Popper v. Broderick,* 123 Cal. 456.) That the matter of opening the streets of a municipality is a municipal affair is not disputable under the authorities. (*Sinton v. Ashbury,* 41 Cal. 531; *People v. Holliday,* 93 Cal. 241; 27 Am. St. Rep. 186; *Hellman v. Shoulters,* 114 Cal. 141.) As the charter of the city of

Los Angeles ceased, upon the adoption of the amendment to article XI, section 6, to be subject to and controlled by general laws in its municipal affairs, it follows from the foregoing that its provisions relative to street opening came again into force, and that the assessment in this case was based upon proceedings taken under a law having no longer any applicability to the city. The assessment was, therefore, void, as the trial court properly decided.

The proceedings resulting in the assessment being void, the deed of the superintendent after sale of the property would itself be void and cast no cloud on the true title. Whatever relaxation of the rule may be found in other states, it is well established in this that under such circumstances the extraordinary relief of injunction will not be granted. (*Savings etc. Soc. v. Austin*, 46 Cal. 415; *Williams v. Corcoran*, 46 Cal. 553; *Houghton v. Austin*, 47 Cal. 646; *Dean v. Davis*, 51 Cal. 406; *Lent v. Tillson*, 72 Cal. 404; *Esterbrook v. O' Brien*, 98 Cal. 671.) Nor is the naked averment in the complaint that the granting of the injunction will prevent a multiplicity of suits of itself sufficient to justify the issuance of the writ, unless it fairly appears from the nature of the subject matter that a multiplicity of suits would follow if the writ were not granted. In this case it cannot be perceived how such a result would ensue. The mere fact that the owner of the land might be compelled either to defend his title or to prosecute an action against a possible asserted claim based upon the void deed, would not of course be sufficient. Yet this is all which in the present instance he could be called upon to do. If action were brought against him based upon the void deed, his defense would be complete. If, upon the other hand, a claim of right or title founded upon the same instrument should be asserted, he could successfully prosecute an action to have it declared a nullity.

The judgment appealed from is affirmed.

Temple, J., McFarland, J., Harrison, J., Van Dyke, J., Garoutte, J., and Beatty, C. J., concurred.