[Civ. No. 1916.   Third Appellate District.—March 22, 1919.]

# G. T. AHLMAN, Respondent, v. THE BARBER ASPHALT PAVING COMPANY (a Corporation), et al., Appellants.

[1] STREET LAW—DESCRIPTION OF DISTRICT—PLEADING—FINDING.—In an action to quiet title and to restrain the issuance of bonds upon plaintiff's property for street work, an allegation "that said resolution [of intention] described the district," is susceptible of no other construction than that the district was described *so as to be capable of identification,* and where such allegation is not denied, a finding "that the description of the district as given in said resolution of intention was not sufficient to identify the same," etc., is outside of the issues and contrary to the allegations of plaintiff's complaint.

[2] ID.—FINDINGS OUTSIDE ISSUES—WAIVER.—While a finding of fact not in issue is sometimes upheld upon the theory that the parties have waived the point by their failure to object to the evidence, the rule cannot be extended to the justification of a finding in favor of a party contrary to his allegation, which allegation is not denied by his adversary.

[3] ID.—ASSESSMENT—INCLUSION OF IMPROPER ITEM—APPEAL—WAIVER.—An objection to a street assessment on the ground that it includes an item paid to an abstract company for search of record on the property to ascertain the exact frontage of the lots is waived by failure to present such objection to the council on appeal to that body.

[4] ID.—OMISSION OF LOT—REMEDY.—If a lot in an assessment district is omitted from the assessment, the remedy of a property owner feeling aggrieved thereby is by appeal to the council.

[5] ID.—SUFFICIENCY OF APPEAL—PROOF.—On such an appeal, it is not sufficient for the property owner to allege that various parcels of property within the district have not been assessed to pay their proportionate share of the cost, but he must specify and designate the lot or lots which he claims were omitted, and on the hearing present evidence to the council to support his claim.

[6] ID.—ISSUANCE OF BONDS—PROCEDURE TO PREVENT.—Since section 4 of the Bond Act of 1893 (Stats. 1893, p. 33) provides a simple procedure whereby a property owner may prevent the issuance of any bond for the assessment of his lot, he is in no position to complain of the issuance of bonds where he has not pursued the course prescribed.

[7] ID.—"NO SUFFICIENT LEGAL RESOLUTION"—CONCLUSION OF LAW.—In an action to quiet title and to restrain the issuance of bonds upon plaintiff's property for street work, a finding that "no sufficient legal resolution" of intention was passed is a conclusion of law.

APPEAL from a judgment of the Superior Court of Santa Clara County. W. A. Beasly, Judge. Reversed.

The facts are stated in the opinion of the court.

William H. Johnson and J. A. Cooper for Appellants.

Beggs & McComish for Respondent.

BURNETT, J.—This is an action to quiet title and to restrain the issuance of bonds upon plaintiff's property for street work in the city of San Jose. Similar actions were brought against the defendants by four other property owners. By stipulation, the actions were consolidated and tried together.

The only pleadings in the record before us are the complaint of the plaintiff, Ahlman, and an amendment thereto, and the answer of defendant, the Barber Asphalt Paving Company. Respondent, in his brief, states that said answer was adopted by the other defendants, and we will so consider it, although there is a reference in appellants' specifications to a separate answer of the defendants, Lightston and Farrell.

There is no denial in the answer of plaintiff's allegation of ownership of the property in question.

Paragraph 5 of the complaint alleges that the defendants and each of them claim some interest in or lien upon said property, but that such claims are wholly without right. The answer denies this allegation and alleges that defendant, the Barber Asphalt Paving Company, does claim a lien upon said property and that its claim is neither wholly nor at all without right. The court found in accordance with the allegation of the complaint.

Paragraph 6 alleges that "on April 14, 1913, the common council of the city of San Jose passed a resolution purporting to be a resolution of intention, and, on April 16, 1913, the same was approved by the mayor of said city, wherein and whereby it was resolved that Market Street, from San Carlos Street to First Street in said city, be improved by constructing thereon a pavement, consisting of two inches of asphalt," etc. "That said resolution provided that the cost of said work should be charged against a district, and described the district, which district included the land of the plaintiff herein-

before described; and said resolution further provided that ten-year serial bonds, bearing interest at the rate of seven per cent per annum, should be issued by the city treasurer to represent each assessment of $25 or more; that no sufficient or legal resolution of intention was ever passed for the doing of said work; that the said resolution did not sufficiently describe the work to be done, or which was done thereunder, nor did it comply with the conditions of the charter . . . or of the Vrooman Act, so called, or of the said Bonding Act of 1893.'' The answer denied this allegation and a copy of the resolution of intention was attached and made a part of the answer ''for all particulars therein and thereby appearing,'' and there was also annexed ''the notice of street work'' posted and published by the superintendent of streets pursuant to said resolution of intention. The finding (III) adopted the allegation of the complaint down to and including the following: ''That said resolution provided that said work should be charged against a district, and described the district,'' and continued: ''But the description of the district as given in said resolution of intention was not sufficient to identify the same, but was indefinite and such that it could not be located upon any particular land or lands within the city of San Jose. That said resolution purported to include the land of plaintiff herein described,'' and ''that no sufficient or legal resolution of intention was ever passed for the doing of said work, nor did it comply with the conditions'' of the charter or of said Street Bonding Act.

Paragraph 9 of the complaint alleged: ''That on June 9, 1913, the mayor and common council passed a resolution ordering said work to be done, in accordance with the plans and specifications passed and adopted . . . on February 17, 1913. That said resolution was posted from June 23 to June 27, 1913.'' The answer alleged that it was declared in said resolution ''that the public interest and convenience required to be done the street work in said resolution and in said resolution of intention described,'' and a copy thereof was made a part of the answer. There was no finding of the court upon this point.

It is alleged in paragraph 10 that, on June 20, 1913, the mayor and common council gave notice inviting proposals for the doing of said work, which was posted from June 23d to June 27th and not otherwise. Defendants made this notice

a part of the answer and alleged that it was "conspicuously posted near the chamber door of said mayor and common council on the twenty-third day of June, 1913, and was so kept posted thereafter for five consecutive days." The finding was in the language of the complaint.

Allegation 11 is that the defendant corporation put in a bid offering to do said work for certain specified prices. The answer amplified the allegation by enumerating the contents of said bid and stating that it was accompanied by a bond, etc. The finding followed the allegation of the complaint.

Paragraph 12 alleged the acceptance of said bid by the city authorities, the passage of the resolution awarding the contract to the corporation, defendant, and that said company entered into a contract to do said work according to the resolution of intention and said plans and specifications. The answer went into further details and attached a copy of the notice of award. It then proceeded to set out the various steps taken by defendant preliminarily to doing the work and alleged that it did perform the work to the satisfaction of said superintendent of streets. The finding was in the language of the complaint.

Paragraph 13 alleged that "the superintendent of streets made his warrant, diagram and assessment whereby the land of plaintiff . . . was assessed for the sum of $951.69. That the total sum assessed upon said district contained large items which are not legally chargeable upon said district, or the lands embraced therein." The answer went into details concerning the preparation of the diagram and the assessment, and denied the allegation concerning illegal charges. The finding was in the language of the complaint and as to the last portion thereof it was: "That the sum of $25 for making said assessment" was not legally chargeable upon the district or the lands embraced therein.

In paragraph 14 it was alleged that the assessments were not uniform or equal, which allegation was denied by the answer. As to this there was no finding.

There is no reference in the answer to the remaining allegations of the complaint. As to these the court found: That within the time allowed by law certain owners of property within the district appealed to the mayor and common council from said assessment and specified the particulars in which it was alleged to be illegal, which are fully set out; that said

appeal came on for hearing but was denied by the mayor and common council. There was then a finding that, prior to August 4, 1873, the portion of Market Street in question had been constructed, repaired, and fully improved and duly accepted by ordinance, which provided "that thereafter the roadway of said portion of said street should be kept open and in repair by said city, and that the expense thereof should be paid from the general fund"; and that said ordinance has never been repealed. It was then found that it was not true that said diagram showed said land to be all within said district; that it was not true that the superintendent of streets estimated benefits arising from said work upon said lots within the district nor that he assessed the total sum upon the several pieces within said district; "but it is true that no assessment district was described in said resolution of intention . . . with sufficient certainty to identify the same."

The judgment was that plaintiff was the owner in fee of the property referred to free and clear of all claims of the defendants or either of them; that neither of the defendants has any claim of lien upon said property, and that plaintiff is entitled to recover from the Barber Asphalt Company his costs, taxed at $34.65.

1. The portion of finding No. 3, "that the description of the district as given in said resolution of intention was not sufficient to identify the same, but was indefinite," etc., is attacked by appellants.

In this connection, the claim of respondent is not only that the description is indefinite, but that, if it may be accepted at all, and the description contained in the resolution of intention had been properly delineated upon the diagram of the assessment district, there would have been included in said district a lot of land which is shown to have been excluded from the assessment.

Said description commences as follows: "Beginning at a point 160.45 feet westerly from the intersection of the westerly line of Market Street with the southerly line of San Carlos Street, running thence southerly 69.19 feet to a point; thence southwesterly 150.07 feet to a point; thence southerly a distance of 214.4 feet," etc. The last two calls in the description are: "Thence southerly along the easterly line of the west branch of Market Street to its intersection with the northerly line of San Carlos Street; thence southwesterly to the point

of beginning.'' In respondent's brief is a diagram of the portion of the district in question, which we here reproduce.

''The heavy solid line,'' says the brief, ''shows the boundary of the district as shown on the diagram. The dot and dash line (B–C–D–E) shows where the boundary would have run if the description found in the resolution of intention had been followed. The dotted line (E–W–X–Y–Z) shows where the line would have run if traced backward from the point 'E' in the northerly line of Auzerais Avenue, which is the first point definitely fixed by a physical description. Neither of these lines coincide with the boundaries shown on the diagram.

"The plat we furnish herewith shows that there is no assessment on the parcel of land bounded on the northerly side by the southerly line of San Carlos Street and a portion of the line C–D; on the westerly side by a portion of the line D–E; on the southerly side by the northerly line of lots 6 and 5; and on the easterly side by a portion of the westerly line of lot 2."

R. C. McComish, one of the attorneys for plaintiff, testified: "I am familiar with First Street, in this city, I know the course of that street. It is about thirty degrees west of north. It runs northwest and southeast and varies from north to south about thirty degrees. I am familiar with San Carlos Street, in this city. It runs at right angles to First Street."

Irving L. Ryder, city engineer, testified: "I know First Street varies to the west. Take the monument line, generally speaking throughout the town, not for this particular street but in the neighborhood of the angle, San Carlos Street, there may be a variation of from one-half of a minute out, due to the variation of the monument, the general direction of the street. The streets are, generally speaking, at right angles to one another, but not absolutely; the variation of San Carlos between First and along past Market Street, is not more than one minute at any rate from a right angle to First Street."

W. E. McIntyre testified on behalf of defendants: "I assisted in preparing the description relative to the Market Street improvement. I was city engineer at the time. In connection with the map I could answer as to the intention of the description; with the map the intention and the resolution is perfectly apparent. I am familiar with the resolution of intention. Beginning the description at the intersection of the southerly line of San Carlos Street with the westerly line of Market Street, the description at that point had to be referenced out, . . . and then the point begins 160.45 feet westerly from that point of intersection . . . As I understood it, not knowing the technicality of law, the descriptions in cases of law, I understood westerly would naturally mean along the street line . . . I made the diagram that was finally used by the superintendent of streets for the purpose of making the assessment. San Carlos Avenue runs thirty degrees south of west."

The foregoing constitutes all the evidence in the record as to the description of said assessment district. It must be ap-

parent that plaintiff's showing was quite meagre. His diagram was not produced at the trial, nor, of course, introduced in evidence. It simply represents his deductions from the testimony of his own attorney and has been submitted in his brief for the inspection of this court. It is apparent that, according to the diagram which was made by the city engineer and upon which the assessment was based, the starting point of the description was located on the southerly line of San Carlos Street. This point was deemed to be 160.45 feet "westerly" from the intersection of said line with the westerly line of Market Street. Respondent, however, claims that this point is not due west from said intersection, but that to satisfy said call you must go across San Carlos Street to obtain the starting point as indicated on his diagram.

Following strictly the language of the description, we would probably have to agree with respondent's contention, although we consider it a fair conclusion from the whole record that the intention was to select said point in the southerly line of said San Carlos Street as the starting point for the description of the district. We may add, further, that if an error was made in the description as claimed by respondent, it is, at least, doubtful whether it was of a prejudicial nature.

[1] But, be that as it may, the finding as to the description is outside of the issues and is contrary to the allegation of plaintiff's complaint. While the complaint does not allege that the district was described *so as to be capable of identification,* we deem it susceptible of no other construction. Such is the necessary implication from the averment "that said resolution described the district."

[2] While the finding of a fact not in issue is sometimes upheld upon the theory that the parties have waived the point by their failure to object to the evidence, in other words, because they have treated the case as though it were a material finding, the rule cannot be extended to the justification of a finding in favor of a party contrary to his allegation, which allegation is not denied by his adversary.

[3] 2. Appellants attack the finding of the court that the sum of $25 "for making said assessment" was not legally chargeable upon the district. The evidence disclosed that the item "was paid to the San Jose Abstract Company for search of record on the property to ascertain the exact frontage of the lots." It is not disputed that respondent's portion of this

was one dollar and such amount was added to his assessment. Several contentions in reference to it are made by appellants, but we may refer to one only, which is, that respondent cannot question the validity of the assessment on this ground, for the reason that he did not present it to the council on his appeal to that body. In said appeal he urged seven different and distinct grounds, but did not even suggest that the assessment was too large or that it contained any improper or illegal item. Of course, it must be presumed that if he had called the attention of the council to the fact that his assessment was thus excessive to the extent of one dollar, that tribunal would have relieved him from the burden of his charge. Such appeals contemplate the correction of errors like this, and it is entirely just and right that if a property owner fails to avail himself of this privilege thus accorded him by the law, he should thereafter be precluded from urging the objection.

The point is, indeed, covered by the decision of the supreme court in *Boyle* v. *Hitchcock*, 66 Cal. 129, [4 Pac. 1143], where it was held that "an objection to a street assessment in San Francisco, that it included an amount, as incidental expenses, for engraving and printing, was waived by a failure to appeal to the board of supervisors."

[4]   3. Another point made in favor of the judgment is that a lot in the district was omitted from the assessment and for this reason the whole assessment was void. There is no specific finding as to this, the court basing its judgment upon the ground, substantially, that no district was created since it could not be identified from the description. But if the point may be considered at all, it is sufficient to say that there is no such allegation in the complaint nor is there any evidence to support it. It is true that plaintiff's said diagram includes apparently a lot that was not assessed, but this diagram, as we have said, constitutes no part of the record. Besides, if such error was committed, the remedy was by appeal to the council. (*Buckman* v. *Landers*, 111 Cal. 347, [43 Pac. 1125].)

[5]   It is true that an appeal was taken to said council and in support thereof it was alleged: "That various parcels of property within the district upon which said work has been made a charge, have not been assessed to pay their proportionate share of the cost of said work," but respondent should have specified and designated the lot or lots which he claimed were thus omitted. Moreover, the record does not show that

he offered any evidence in support of this claim, the transcript simply showing that "the proceedings relative to the Market Street paving was offered in evidence on appeal to the council. That said proceedings included all the records and proceedings in the office of the superintendent of streets connected with the assessment and were offered in evidence without argument." Manifestly, we cannot assume that any of those proceedings showed that any lot was improperly omitted from said assessment. In a matter of this kind it is as much incumbent upon the property owner to present evidence to the council to support his claim as it is to make the appeal. If he does not offer any such evidence he must abide by the finding against him.

4. Another point urged in the briefs is as to whether the Bond Act of February 27, 1893 (Stats. 1893, p. 33), under which admittedly the bonds involved herein were issued, is applicable to the city of San Jose.

There is no dispute that said city is operating under a freeholders' charter (Stats. 1897, p. 592); that this charter provides a system of street improvements and the collection of the costs thereof; that the improvement of streets is a municipal affair (*Byrne* v. *Drain,* 127 Cal. 663, [60 Pac. 433]), and that municipal affairs are regulated and controlled by the charter where it provides therefor and not by general laws passed by the legislature. (Cal. Const., art. XI, sec. 6; *Byrne* v. *Drain, supra.*) Said charter provides: "An act of the legislature of the state of California entitled 'An act to provide for work upon streets, lanes, alleys, courts, places and sidewalks and for the construction of sewers within municipalities, approved March 18, 1885, as since amended, and as hereafter shall be amended, is hereby adopted as a part of this charter and shall have the same force and effect as if incorporated at length herein, except where the provisions of said act conflict or are inconsistent with the provisions of this charter.' " Said act of 1885, commonly known as the Vrooman Act, as it existed at the date of the adoption of the San Jose charter, did not provide for the issuance of bonds for the payment of street assessments, although this scheme was thereafter included therein by amendment. The contention of respondent is, therefore, that the provisions of the Vrooman Act as they existed on March 5, 1897, became a part of said charter as though they had been expressly incor-

porated therein (*Ramish* v. *Hartwell*, 126 Cal. 443, [58 Pac. 920]; 2 Lewis' Sutherland on Statutory Construction, 787), but that subsequent amendments to said Vrooman Act cannot be so regarded, notwithstanding the said language of the charter, for the reason that the charter cannot be amended in that manner (art. XI, sec. 8), and the provision in the statute must yield to the rule laid down in the constitution. The conclusion is reached that said Bond Act as a part of the general law is no part of said charter. (*Byrne* v. *Drain*, *supra; Fritz* v. *San Francisco*, 132 Cal. 373, [64 Pac. 566]; *Sunset Telephone Co.* v. *Pasadena*, 161 Cal. 265), [118 Pac. 796].)

It is further claimed that said Bond Act was not adopted as a part of the charter by virtue of the reference in section 4, chapter 1, article VIII, as follows: "If bonds are to be issued pursuant to an act of the Legislature entitled 'An act to provide a system of street improvement bonds to represent certain assessments for the cost of street work and improvements within municipalities, and also for the payment of such bonds' approved February 27, 1893, and any assessment less in amount than $50. remains unpaid for thirty days from the date of the warrant, or for five days after final decision on appeal, as provided in section 11 of said act, the Mayor and Common Council may, by resolution, order such assessment paid from the street contingent fund, and the superintendent of streets shall thereafter release said assessment on the books of his office, as upon payment in other cases." There is force in the contention that such reference to the Bond Act is not sufficient to make it a part of the charter. There is certainly no clearly expressed intention to adopt it, such as is found in reference to the Vrooman Act. Moreover, if the reference thereto be deemed sufficient to constitute it a part of the charter, then it would include said act as it stood in 1897. Said act at that time authorized the issuance of bonds only upon a finding by the council upon estimates of the engineer that the cost would be greater than one dollar per front foot along each line of the street (Stats. 1893, p. 33). The complaint alleges that there was no such estimate or finding and this was not denied. It would seem, therefore, that justification is not shown for the issuance of the bonds.

[6] However, we are satisfied that the plaintiff is in no position to complain of the issuance of the bonds. Section 4

of said Bond Act provides a simple procedure whereby the property owner may prevent the issuance of any bond for the assessment on his lot. This course was not pursued. As stated in *German S. & L. Soc.* v. *Ramish,* 138 Cal. 126, [69 Pac. 92]: "The bond creates no new liability and in effect provides for what by some would be regarded as more favorable payment, because in installments and after a period of years. However this may be, the lot owner cannot complain since he may pay the assessment and prevent the issuance of the bond." Of course, if plaintiff had made this objection, his land would still be subject to the assessment under the other provisions of the Vrooman Act.

It would be an unjust construction of the law that would permit the property owner to escape his obligation to pay for the improvement altogether, because a mistake may have been made in granting him the favor of payment for the benefit in installments. He is at least put to his election to choose which method of collection shall be pursued.

5. We have not noticed specifically the finding of the court that said Market Street had been previously "constructed, repaired, and fully improved to the satisfaction of the mayor and common council," and accepted by an ordinance duly passed with a provision that it should thereafter be "kept open and in repair by said city," for the reason that respondent at the oral argument disclaimed reliance upon that finding.

[7] We may add that the finding that "no sufficient legal resolution" of intention was passed is manifestly a conclusion of law and it requires no specific consideration.

The proceedings awarding the contract were in all respects regular and there is no claim of fraud of any kind. The Paving Company performed its contract fully and justly; it improved and regraded the street to the satisfaction of the city, and it hardly seems right that it should lose any compensation for its services by reason of the technical objections that have been made to the assessment.

We think the judgment and order should be reversed. It is so ordered.

Buck, P. J., *pro tem.,* and Hart, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 21, 1919, and a petition 'to

have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 19, 1919.

All the Justices concurred, except Lawlor, J., who was absent.