CENTRAL CAMBALACHE, INC., Plaintiff, v. RAFAEL DE J. CORDERO, MANAGER OF THE STATE INSURANCE FUND, ET AL., Defendants.

No. 25. Argued June 20, 1942.—Decided November 4, 1942.

*E. Pérez Casalduc* for plaintiff. *George A. Malcolm, Attorney General, G. Benítez Gautier, Deputy Attorney General,* and *G. Atiles Moréu, A. de Jesús Matos,* and *J. Correa Suárez, Legal Advisers of the State Insurance Fund,* for the Manager of said Fund.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The plaintiff invoked the original jurisdiction of this court and prayed for a writ of injunction against the Manager of the State Insurance Fund and the Industrial Commission restraining them from declaring the plaintiff an uninsured employer with respect to the accidents sustained by its workmen during the period from July 1 to December 15, 1941. The petitioner, prior to July 15, 1941, filed with the Manager of the State Insurance Fund the duplicate statement required by §27 of Act No. 45 of 1935 (Laws of 1935, p. 250), showing the number of workmen employed, their occupation, and the total amount of wages paid during the preceding fiscal year. On October 28, 1941, the petitioner received a communication from the manager notifying him of the preliminary liquidation for fiscal year 1941–42, in the amount of $9,543.72 for a semester, and providing that payment for the first semester must be made on or before November 7, 1941. This communication was sent on the official blank prepared for that purpose, but with the portion concerning the "Final Liquidation" left in blank. In view of this circumstance, the petitioner wrote to the manager asking that the term for the preliminary liquidation be extended; that is, the time for the payment of the premium for the first semester, until the manager determined the liquidation for the preceding year. The manager answered that he deemed such an extension unnecessary, inasmuch as the petitioner would receive the "Final Liquidation" before the expiration of the term fixed by him, that is November 7, 1941, plus the extension of 30 days granted by law, which would expire on December 7, 1941. In that communication nothing was

said in connection with the payment of the preliminary premium in the event that, when the extension of thirty days had expired, the petitioner had not filed the said final liquidation. The petitioner, according to the wording of said communication, was of the opinion that it was not bound to pay the preliminary premium until it received the final liquidation and relied on the fact that it would be received before December 7, 1941. At the expiration of said term, the final liquidation not having been received, the petitioner wrote the manager, asking him to explain why it had not been sent. The manager answered on December 13, 1941, by a telegram from San Juan, acknowledging receipt of the letter and notifying the petitioner that the extension of thirty days had expired on December 7 and December 15th, the petitioner paid the preliminary premium. due to the fact that his risks were not covered. On Monday, December 15th, the petitioner paid the preliminary premium. Notwithstanding this payment, the manager declared that petitioner was an uninsured employer for all the accidents of his workmen which occurred between July 1 and December 15, 1941. Subsequently the plaintiff was summoned and appeared at the hearing of some of said cases before the Industrial Commission. At the beginning it objected to being declared an uninsured employer, and after the evidence and the briefs of the plaintiff and of the manager had been submitted, the decision of April 22, 1942, was rendered, upholding the manager's contentions.

The plaintiff did not institute a proceeding for review. Instead, on May 1st, it filed the petition for injunction now before us wherein, besides what we have already stated, it further set forth its reasons for invoking the original jurisdiction of this court and alleged that the remedy of review was inadequate, that injunction was the proper remedy and relied on the claim that a multiplicity of suits would thus be prevented, referring to the 200 or 300 cases of accidents

sustained by its workmen between July 1 and December 15, 1941, which cases it would otherwise have to defend before the Industrial Commission.

We issued a rule to show cause. The manager answered and admitted the essential facts of the petition, but alleged that the present case was not a proper one for invoking our original jurisdicion; that the complaint did not state facts sufficient to constitute a cause of action; and, moreover, moved that certain particulars of the complaint be stricken. After the parties were heard, the case was finally submitted to us on July 20 last.

In view of our exclusive jurisdiction to review the decisions of the Industrial Commission and considering that there is involved the welfare of the workmen or their beneficiaries, who, due to their poverty, must have their cases decided as rapidly as the circumstances of each case will permit, we would not hesitate, should an injunction lie, to agree with the plaintiff that our original jurisdiction could be invoked in such a case and thus avoid any delay. But does the writ of injunction lie in the instant case? The plaintiff cites subdivision 6 of §677 of the Code of Civil Procedure (1933 ed.) which provides that the writ of injunction may be granted "where the restraint is necessary to prevent a multiplicity of judicial proceedings." However, it is a fundamental principle of equity, as old as equity itself, that one can not resort to it if there exists an ordinary remedy at law which is speedy, adequate, and effective. Our decisions are binding on the Industrial Commission, and unless reversed, they must be followed by that commission in deciding the cases pending before it. This being so, we must assume that the commission will follow the proper course, and will not exceed the limits fixed by the statute. Therefore, we have no doubt that in deciding the controversy by a direct review in any of the cases which gave rise to the present proceeding, we would thereby establish the rule con-

trolling the determination of the 200 or 300 cases which, according to the plaintiff, are pending against it before the Industrial Commission. ■ As was held in *Byrne* v. *Drain,* 127 Cal. 663, 668; 60 Pac. 433, in order to resort to the relief of injunction to prevent a multiplicity of suits, it should fairly appear from the nature of the subject matter that a multiplicity of suits would follow if the injunction were not granted. This being so, if our decision in a proceeding for review would, in all probability, in view of the attendant circumstances, prevent a multiplicity of suits, then why invoke the extraordinary remedy of injunction, if there actually exists the writ of review provided by the statute, which is a relief as speedy, adequate, and effective as the former?

■ It is true that in a proceeding for review we can not disturb the findings of fact of the commission, unless there is involved the weighing of expert evidence, or, of course, where said findings are not supported by any evidence, since, apart from the fact that a decision based on such findings would violate the constitutional guarantee of due process of law, the error thus committed would not be an error of fact but of law, as was held in *Montaner* v. *Industrial Commission,* 54 P.R.R. 686. However, in the instant case, there is no dispute whatsoever as to the facts. They are admitted by the manager and besides, the evidence supporting the same is all documentary, to wit: the communication from the manager fixing the date for the payment of the premium corresponding to the first semester and the date on which said payment was made, December 15, 1941, which date was alleged by the plaintiff itself in the injunction proceeding and admitted by the manager. But even if there should exist a conflict in the evidence, it would not be enough for us to issue the writ of injunction sought. It is a practice in administrative procedure that questions of fact are not subject to judicial review. In his work "The Administrative Process" Dean Landis says, at page 142, that the positive reason for

declining judicial review over findings of fact made by administrative boards or tribunals is the belief that the ability of the experts who make up said administrative boards can be trusted to determine these issues as capably as judges, if safeguarded by adequate procedure. See the article by Professor Roland Pennock entitled "Judicial Control of Administrative Decision," and the one by Professor John M. Pfiffner, entitled "The Development of Administrative Regulation," both published in The Annals of the American Academy of Political and Social Sciences in the May 1942 volume, pp. 183 and 1, respectively.

Finally, the rule which determines the proper procedure is set forth by Mr. Justice Brandeis in his concurring opinion in the case of *St. Joseph Stock Yards Co.* v. *United States,* 298 U. S. 38, 73, where he states that the safeguard which the due process clause assures is not that a court may review the findings of administrative tribunals, but that no finding shall be made except upon due notice and opportunity to be heard; that the procedure at the hearing shall be consistent with the essentials of a fair trial; and that it shall be conducted in such a way that there will be opportunity for a court to determine whether the applicable rules of law and procedure were observed.

It is obvious that the proceedings for review established by our Workmen's Compensation Act is in accord with the opinion delivered by Mr. Justice Brandeis.

The petition for injunction must be denied.