CENTRAL CAMBALACHE, INC., Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, Respondent; STATE INSURANCE FUND, Insurer.

No. 263.   Argued May 17, 1943.—Decided September 23, 1943.

*E. Pérez Casalduc* for petitioner. *M. Rodríguez Ramos, Acting Attorney General, G. Benítez Gautier, Deputy Attorney General,* and *Angel de Jesús Matos* and *Joaquín Correa Suárez, Legal Advisers,* for the State Insurance Fund.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The question involved in this case is closely related to our decision in *Central Cambalache Inc.* v. *Cordero, Manager,* 61 P.R.R. 7. The facts may be outlined thus: The petitioner prior to July 15, 1941, filed with the Manager of the State Insurance Fund the duplicate statement required by §27 of Act No. 45 of 1935 (Spec. Sess. Laws, p. 250) showing the number of workmen employed, their occupation, and the total amount of wages paid during the preceding fiscal year.   On October 28, 1941, the petitioner received a com-

munication from the Manager notifying him of the preliminary liquidation for the fiscal year 1941–42, in the amount of $9,543.72 for a semester, and providing that payment for the first semester must be made on or before November 7, 1941. This communication was sent on the official blank prepared for that purpose, but with the portion concerning the "Final Liquidation" left in blank. In view of this circumstance, the petitioner wrote to the Manager asking that the term for the payment of the preliminary liquidation—that is, the time for the payment of the premium for the first semester—be extended until the Manager should determine the liquidation for the preceding year. The Manager answered that he deemed such an extension unnecessary, inasmuch as the petitioner would receive the final liquidation before the expiration of the term fixed by him, plus the extension of 30 days granted by law, which would expire on December 7, 1941. In that communication nothing was said in connection with the payment of the preliminary premium in the event that, when the extension of 30 days had expired, the petitioner had not filed the said final liquidation. The petitioner, as alleged in its petition for injunction in *Central Cambalache, Inc.* v. *Cordero, Manager, supra,* was of the opinion that it was not bound to pay the preliminary premium until it received the final liquidation and relied on the fact that the same would be received before December 7, 1941. At the expiration of said term, the final liquidation not having been received, the petitioner wrote to the Manager, asking him to explain why it had not been sent. The Manager answered on December 13, 1941, by a telegram from San Juan, acknowledging receipt of the letter and notifying the petitioner that the extension of 30 days had expired on December 7 and demanding immediate payment of the preliminary premium due to the fact that his risks were not covered. On December 15th the petitioner paid the preliminary premium. Nothwithstanding this pay-

ment, the Manager declared that *petitioner was an uninsured employer for all the accidents of his workmen which occurred between July 1 and December 15, 1941.* For this reason petitioner herein was summoned and appeared at the hearings of some of said cases in the Industrial Commission and at the beginning of said hearings it objected to being considered an *uninsured employer;* and after admitting the evidence and briefs of the petitioner and of the Manager, the Industrial Commission rendered a decision on April 22, 1942, upholding the Manager's contention. The petitioner did not move for reconsideration and did not institute a proceeding for review. Instead, on May 1, 1942, it filed a petition for injunction in this court against the Manager of the State Insurance Fund and the Industrial Commission, praying that they be enjoined from declaring the petitioner an *uninsured employer* in connection with the labor accidents which occurred during the period from July 1 to December 15, 1941.

In the injunction petition it alleged that if said writ were granted, a multiplicity of suits would be prevented, pointing out that during said period about 200 or 300 labor accidents had been sustained by its workmen, and if the injunction were denied, it would have to defend all the cases before the Industrial Commission.

We heard the parties and on November 4, 1942, we rendered the decision referred to at the beginning of this opinion wherein the petition for injunction was denied.

In answer to petitioner's contention to the effect that the issuance of the writ of injunction would prevent a multiplicity of suits, we stated then that our decisions are binding on the Industrial Commission and, unless reversed, they must be followed in deciding the cases pending before it, and this being so, we had to assume that the Commission would follow the proper course, and would not exceed the limits fixed by the statute, and we added: "Therefore, we have no doubt that in deciding the controversy by a direct

review in any of the cases which gave rise to the present proceeding, we would thereby establish the rule controlling the determination of the 200 or 300 cases which, according to the plaintiff, are pending against it before the Industrial Commission." As was held in *Byrne* v. *Drain,* 127 Cal. 663, 668, 60 Pac. 433, in order to resort to the relief of injunction to prevent a multiplicity of suits, it should fairly appear from the nature of the subject matter that a multiplicity of suits would follow if the injunction were not granted. This being so, if our decision in a proceeding for review would, in all probability, in view of the attendant circumstances, prevent a multiplicity of suits, then why invoke the extraordinary remedy of injunction, if there actually exists the writ of review provided by the statute, which is a relief as speedy, adequate, and effective as the former?"

We further held that the questions involved in petitioner's case, in the event that they should have come to this court on a writ for review, are all questions of facts which we could not disturb, and in the end we held that the writ of review, considering that the Industrial Commission is a tribunal or administrative board, is adequate and constitutional.

There is no doubt that the decision rendered by the Industrial Commission on April 22, 1942, declaring petitioner herein an uninsured employer, became final, as no proceeding for review was instituted and the injunction referred to was not granted.

Notwithstanding this, the petitioner again resorted to the Industrial Commission on appeal from the decision of the Manager rendered in the 200 or 300 cases mentioned in the petition for injunction and again raised the same question of whether or not it was an uninsured employer. The Commission dismissed the appeals on the ground that said question had been already decided on April 22, 1942, which decision was final.

In the decision denying the motion for reconsideration, rendered on February 26, 1943, the Industrial Commission stated:

"As to the allegation that the Supreme Court of Puerto Rico has not considered or decided the question of the status of the petitioner as an employer, we merely have to point out that the Supreme Court of Puerto Rico denied the petition for injunction instituted by said employer. That the decisions of the Supreme Court are binding on the Industrial Commission is unquestionable. That the Industrial Commission shall act properly and shall not exceed the limits fixed by law, is a rule that has been and is followed by this Industrial Commission in all cases. Lastly, we repeat, that if after the Industrial Commission had decided that the employer was not insured during the period from July 1 to December 15, 1941, the Manager of the State Insurance Fund, upon liquidating the cases of labor accidents which occurred within said period during which the employer was uninsured, had fixed some incapacity, compensation or expenses in one or several cases, and the employer had considered that said incapacity, compensation or expenses was not fair or reasonable and had appealed to the Industrial Commission to prove that said incapacity, compensation or expenses was not fair and reasonable, the Industrial Commission would have given the employer an opportunity to be heard and defend itself. But what the employer again alleges is that it was insured between July 1 and December 15, 1941, and since a hearing was held to discuss that matter and the employer had ample opportunity to be heard and defend itself, and the Industrial Commission rendered a decision on April 22, 1942, therefore the Industrial Commission HEREBY DECIDES that the motion for reconsideration of February 8, 1943, in cases C.I.—15006, C.I.—15007 and C.I.—15009, must be dismissed and, likewise, for the same reasons stated above, the motion for reconsideration of February 8, 1943 in cases number C.I.—17828 to C.I.—17995 inclusive (168 cases) and the decision rendered by the Industrial Commission on April 22, 1942, is sustained."

The policy acquired by the insured employer from the State Insurance Fund is a single one and it covers all the accidents which may occur during the period it is in force. But each accident constitutes a case separate from the others. In each one there are 3 parties interested in the policy, to

wit: the State Insurance Fund, represented by its Manager, as insurer; the employer, as insured; and the workman or employee, or his dependents, as beneficiaries. The Workmen's Accident Compensation Act recognizes this and provides in §15 that "the Commission shall grant the employer as well as the workman or employee in the case an opportunity to be heard and to defend themselves, conforming as far as possible to the practice observed in the district courts." The petitioner had an opportunity to be heard and defend itself in the case which gave rise to the decision of April 22, 1942, of the Industrial Commission. In so far as this case is concerned, said decision put an end to the controversy and it constitutes *res judicata*. But it is different with the other cases. The decision of April 22, 1942 does not constitute *res judicata*, in so far as the latter are concerned, simply because between the former and the latter there does not exist an identity between the litigating parties, inasmuch as the workman or employee or his dependents are different in each case. Moreover, the question in controversy does not refer to the civil status of the person or to the validity or nullity of testamentary provisions, which are the only cases where, according to §1204 of the Civil Code, the presumption of *res judicata* shall be valid against third persons, even if they should not have litigated. It has happened that an employer has been declared an insured employer, and notwithstanding this, the dependents of the workman or employee, because they have deemed it more convenient for them, have moved to set aside the decision and to be allowed to prove that the employer was uninsured. *Silva* v. *Industrial Commission*, 54 P.R.R. 367. This does not mean that when a case has been reviewed by this court and the applicable rule has been established in order to determine the status of the employer, the rule thus established should not be followed by the Commission, and we must not assume that the parties may be so obstinate as to insist in

raising questions already decided by previous decisions, even though they can not be restrained from doing so because it is a right granted by law "to the employer as well as to the workman in this case."

For the reasons stated the appeal must be sustained, the decision of February 4, 1942 must be reversed, and the cases remanded to the Industrial Commission for further proceedings not inconsistent with this opinion.

Mr. Justice Snyder did not participate herein.