[S. F. No. 19671. In Bank. Feb. 1, 1957.]

CITY OF WALNUT CREEK, Petitioner, v. EDWARD J. SILVEIRA, as City Treasurer, etc., Respondent.

John A. Nejedly, City Attorney, Kirkbride, Wilson, Harzfeld & Wallace, Charles J. Williams, Clark A. Barrett, Kenneth I. Jones, Jr., Arthur J. Harzfeld and Ernest A. Wilson for Petitioner.

Richard M. Ramsey, Richard B. Maxwell and F. L. Manker for Respondent.

CARTER, J.—By this proceeding in mandamus the petitioner, city of Walnut Creek, seeks to compel the city treasurer to issue certain bonds. The bonds were authorized to be issued pursuant to the Limited Obligation Bond Law of 1955 (Stats. 1955, ch. 1847; Gov. Code, §§ 43648-43702). ■ Mandamus is an appropriate remedy to compel respondent treasurer to sign the bonds if the proposed issue meets the requirements of the law since the acts demanded are ministerial duties (*City of Oxnard* v. *Dale*, 45 Cal.2d 729, 731 [290 P.2d 859]).

The act here involved is applicable only to cities with a population of 4,000 or less, which population is not more than one-seventh of the total population of the city and the unincorporated urban area within a radius of three miles of its limits. Section 6 of article XI of the state Constitution provides that "Corporations for municipal purposes shall not be created by special laws; but the Legislature shall, by general laws, provide for the incorporation, organization, and classification, in proportion to population, of cities and towns, which laws may be altered, amended or repealed. . . ."[1] The

---

[1] It has been heretofore held that this section permits classification according to population, not only for the purposes of incorporation, organization and classification, but also permits the Legislature to supply the general laws required "by the varying needs of the municipalities so classified" (*Rauer* v. *Williams*, 118 Cal. 401, 405, 406 [50 P. 691]).

primary question presented here is whether the act here involved is a valid general law within the constitutional meaning or invalid special legislation.

The city of Walnut Creek is a "general law city" (Gov. Code, § 34102). The 1949 merged version of the Classification Act and Municipal Corporation Bill was repealed in 1955 (Stats. 1955, ch. 624, p. 1120) and the Legislature established "chartered cities" and "general law cities." (See Gov. Code, § 34100 et seq.) Pursuant to the Limited Obligation Bond Law, the city of Walnut Creek, after notice duly given, and a hearing, determined that the population formula was met and adopted a resolution in accordance with its findings (Gov. Code, §§ 43648,[2] 43649). Thereafter, at a regular meeting, the city council, by a two-thirds vote, passed and adopted a resolution that the public interest and necessity demanded the acquisition, construction and completion of certain municipal improvements and provided for a municipal bond election. At a subsequent meeting an ordinance was adopted which called for a special election in the city of Walnut Creek to submit to the electors of the city a proposition for incurring a bonded indebtedness to cover the cost of said improvements. Notice was duly given. At a subsequent meeting, one section of the ordinance was amended and notice duly given thereof. The election was duly and regularly called and held in the manner provided by law; two-thirds of the votes cast at the election were in favor of, and authorized the issuance of the limited obligation bonds.[3]

The Limited Obligation Bond Law of 1955 defines limited obligation bonds as bonds which are to be paid solely from sales and use taxes imposed and to be imposed and collected by the city (§ 43650). The law also provides that the bonds shall state that they are to be paid only from such revenues (§§ 43651, 43654); that the term of the bonds shall not exceed 31 years and that "The outstanding bonds shall not at any one time exceed an amount for which the average installments of principal and interest will exceed 66⅔ per cent of the net revenues to be derived from the imposition of sales taxes at the rate established at the time of calling the election at which the proposition of authorizing their issuance is submitted, as

---

[2]The findings of the legislative body as to such population, made after notice and public hearing, shall be conclusive.

[3]There is no contention that the city failed to comply with any provision in the law regarding notice or hearing, or with any other requirement thereof.

determined by an independent audit and report made by a certified public accountant.'' (§ 43654.1.) The general credit, or taxing power, of the city is not liable for the payment of the bonds or interest thereon; only the revenues derived from the sales and use tax are liable therefor (§ 43663).

The city sold the bonds on August 14, 1956, at such a price that the average annual installments of principal and interest on the total proposed bond issue of $2,000,000 will not exceed 66⅔ per cent of the net revenues to be derived from sales taxes imposed at the rate of 1 per cent which was the rate established at the time of the adoption of the ordinance calling the election at which the issuance of the bonds was authorized. The respondent, city treasurer, refused to issue the bonds and this proceeding followed. This was in accord with the statutory provision.[4]

■ *Limited Obligation Bond Law as a valid general law with respect to classification*: It should be noted, preliminarily, that two principles concerning population classification and legislation based thereon have been established in this state (see *Rauer* v. *Williams,* 118 Cal. 401 [50 P. 691]; *Ex parte Jackson,* 143 Cal. 564, 569, 570 [77 P. 457]): (1) That there must be a reasonable basis for such classification with respect to the subject matter of the legislation; and (2) that the legislation must relate to a municipal affair.

■ (1) *Reasonable basis rule*: In *Darcy* v. *Mayor etc. of San Jose,* 104 Cal. 642, 645, 646 [38 P. 500], it was said that ''Legislatures and courts are not at liberty to disregard a policy so plainly manifested in the fundamental law. But, while the sovereign will is thus plainly expressed in the fundamental law, the rule must not receive an interpretation too absolute. It will not be presumed that it was intended to deprive the legislature of all power to adapt its laws to the varying conditions of its inhabitants. From necessity it has been held that the legislature may classify in order that it may adapt its legislation to the needs of the people. If this cannot be done laws will not always bear equally upon the people. This classification, however, must be founded upon differences which are either defined by the constitution or natural, and which will suggest a reason which might rationally be held to justify the diversity in the legislation. ■ It must not be arbitrary, for the mere purpose of classification, that legislation really local or special may seem to be general,

---

[4]Government Code, section 43654.1.

but for the purpose of meeting different conditions naturally requiring different legislation. (*Dougherty* v. *Austin*, 94 Cal. 601 [28 P. 834, 29 P. 1092, 16 L.R.A. 161]; *City of Pasadena* v. *Stimson*, 91 Cal. 238 [27 P. 604].)''

In the case under consideration, the legislation was intended to classify a small city with a large surrounding urban population so as to permit such small city to finance local improvements to accommodate the influx of people from the surrounding unincorporated area. For city residents and taxpayers alone to bear the burden of financing such improvements would obviously be inequitable. The only type of municipal revenue which is available from residents living outside the city is a sales and use tax within the city since such a tax would bear equally upon both residents and nonresidents. It is stated by the city, and not denied by the respondent, that as of 1954 there were 115 cities of under 4,000 population in the state although there are no available figures as to whether all of these could meet the second population test set forth in the Limited Obligation Bond Law. It is argued by petitioner, and not denied by respondent, that the greatest single problem of municipalities today is the improvement and development of municipal facilities in order to keep pace with the needs precipitated by the growth within and without their boundaries. The Limited Obligation Bond Law was passed as ''an urgency measure necessary for the immediate preservation of the public peace, health or safety within the meaning of Article IV of the Constitution and shall take effect immediately. The facts constituting such necessity are:

''There is presently an unprecedented population growth under way within the State and the cities therein. In many cities this growth has caused the facilities within the commercial area of a city to be taxed beyond the general means of the city or for which no general benefit exists beyond the commercial area therein. The proceeds of sales taxes are derived from the sale of merchandise within such commercial areas and constitute an appropriate means of revenue for relieving the conditions existing within said commercial areas.

''Other improvements required by reason of said growth are of a more general benefit. However, by reason of said unprecedented growth, property taxes have seriously increased and it is required that other sources of revenue be provided to pay the costs of needed improvements.'' (Stats. 1955, ch. 1847, § 2, pp. 3429, 3430.)

We said in *Dribin* v. *Superior Court*, 37 Cal.2d 345, 351, 352 [231 P.2d 809, 24 A.L.R.2d 864], that "The following pertinent principles are well established: 'Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.' (*Sacramento M. U. Dist.* v. *Pacific G. & E. Co.* (1942), 20 Cal.2d 684, 693 [128 P.2d 529]; see also *In re Herrera* (1943), 23 Cal.2d 206, 212 [143 P.2d 345]; *Reclamation District* v. *Riley* (1923), 192 Cal. 147, 156 [218 P. 762].) 'The existence of facts supporting the legislative judgment is to be presumed and the burden of overcoming the presumption of constitutionality is cast upon the assailant.' (*Takahashi* v. *Fish and Game Com.* (1947), *supra*, 30 Cal.2d 719, 728 [185 P.2d 805] (334 U.S. 410 [68 S.Ct. 1138, 92 L.Ed. 1478]); *People* v. *Western Fruit Growers* (1943), 22 Cal.2d 494, 507 [140 P.2d 13]; see, also, *In re Fuller* (1940), 15 Cal.2d 425, 437 [102 P.2d 321]; *California Physicians' Service* v. *Garrison* (1946), 28 Cal.2d 790, 803 [172 P.2d 4, 167 A.L.R. 306].) The classification should be reasonable; i.e., 'have a substantial relation to a legitimate object to be accomplished. . . . [I]t is not our concern whether the Legislature has adopted what we might think to be the wisest and most suitable means of accomplishing its objects. [Citations.]' (*Lelande* v. *Lowery* (1945), 26 Cal.2d 224, 232, 234 [157 P.2d 639, 175 A.L.R. 1109].)''

Applying the above principles to the legislation here involved, we cannot hold, as a matter of law, that the classification here concerned has no reasonable basis. We may take judicial notice of the rapid growth of population in the state; of the exodus of great portions of the population of cities into surrounding unincorporated urban areas; of the problems confronting small cities with inadequate facilities for caring for such an increased population.

(2) *Municipal affair rule*: "Municipal affairs" as those words are used in the Constitution, refer to the internal business affairs of a municipality. (*Fragley* v. *Phelan*, 126 Cal. 383, 387 [58 P. 923].)

Section 43652 of the Limited Obligation Bond Law provides that "Such bonds shall be authorized and issued in the manner provided in the applicable provisions of Article I of this chapter, as now or hereafter provided, excepting Sections 43619, 43620, 43632, 43633 and 43634 thereof."

Section 43601 of article 1 provides as follows: " 'Municipal improvement' defined. As used in this article, 'municipal improvement' includes bridges, waterworks, water rights, sewers, light and power works or plants, buildings for municipal uses, wharves, breakwaters, jetties, seawalls, schoolhouses, fire apparatus, street work, and other works, property, or structures necessary or convenient to carry out the objects, purposes, and powers of the city."

The improvements to be made in the instant case consist of covering Walnut Creek which traverses the business area so that it may be used; to provide new streets, to extend non-through streets, to widen other streets, in order to provide adequately for the greatly increased traffic circulation in the commercial area. There can be no question that the proposed improvements fall within the definition of municipal affairs as that rule is set forth in the decided cases (see *Byrne* v. *Drain,* 127 Cal. 663 [60 P. 433]; *Ahlman* v. *Barber Asphalt Pav. Co.,* 40 Cal.App. 395 [181 P. 238]; *City of San Jose* v. *Lynch,* 4 Cal.2d 760 [52 P.2d 919]; *Loop Lbr. Co.* v. *Van Loben Sels,* 173 Cal. 228 [159 P. 600]). It has been held that the term "street work" includes the building and construction of streets, highways, and boulevards (*City of San Diego* v. *Potter,* 153 Cal. 288 [95 P. 146]; *City of Crescent City* v. *Moran,* 25 Cal.App.2d 133 [77 P.2d 281]; Gov. Code, § 43601).

We are of the opinion that the Limited Obligation Bond Law fulfills the second requirement that the legislation relate to a municipal affair.

*Permissible Extent of Indebtedness:* Respondent raises a question as to whether section 43605 of the Government Code is applicable here. That section provides: "*Maximum indebtedness:* '*Indebtedness.*' A city shall not incur an indebtedness for public improvements which exceeds in the aggregate 15 percent of the assessed value of all real and personal property of the city. Within the meaning of this section 'indebtedness' means bonded indebtedness of the city payable from the proceeds of taxes levied upon taxable property in the city." [Amended by Stats. 1955, ch. 334, § 1.] The just quoted section has nothing to do with the Limited Obliga-

tion Bond Law which carries its own provision limiting the outstanding bonds which might be issued (§ 43654.1, heretofore set forth). The bonds issued under the Limited Obligation Bond Law are not payable from the proceeds of taxes levied upon taxable property in the city but are payable from one source only—the revenue collected from sales and use taxes (§§ 43650, 43651, 43656, 43658, 43659, 43660). It is specifically provided in section 43663 that ''The general fund of the city is not liable for the payment of the bonds or their interest.''

 Insofar as the constitutionality of the Limited Obligation Bond Law is concerned, we held in *City of Oxnard* v. *Dale,* 45 Cal.2d 729, 733 [290 P.2d 859], that ''It is settled in California and recognized in almost all of the other states that, as a general rule, a constitutional provision such as section 18 of article XI is not violated by revenue bonds or other obligations which are payable solely from a special fund, provided the governmental body is not liable to maintain the special fund out of its general funds, or by tax levies, should the special fund prove insufficient. (*Department of Water & Power* v. *Vroman,* 218 Cal. 206, 216 et seq. [22 P.2d 698]; *California Toll Bridge Authority* v. *Kelly,* 218 Cal. 7, 10 et seq. [21 P.2d 425]; *In re California Toll Bridge Authority,* 212 Cal. 298, 302 et seq. [298 P. 485] [discussing many cases from other jurisdictions]; *Shelton* v. *City of Los Angeles,* 206 Cal. 544, 548 et seq. [275 P. 421]; see *Garrett* v. *Swanton,* 216 Cal. 220, 227 et seq. [13 P.2d 725]; 38 Am.Jur. 150 et seq.) As pointed out in the case of *In re California Toll Bridge Authority, supra,* 212 Cal. at page 302, such an obligation is not considered to be an indebtedness or liability of the political subdivision or agency issuing the bonds, within the meaning of the constitutional limitation.'' And on page 737 it was concluded that ''an obligation which is payable out of a special fund is not an 'indebtedness or liability' of a governmental body within the meaning of section 18 of article XI of the Constitution if the governmental body is not required to pay the obligation from its general funds, or by exercise of its powers of taxation, should the special fund prove insufficient.'' (See also *Housing Authority* v. *Dockweiler,* 14 Cal.2d 437 [94 P.2d 794]; *City of La Mesa* v. *Freeman,* 137 Cal. App.2d 813 [291 P.2d 103]; *Board of Harbor Comrs.* v. *Dean,* 118 Cal.App.2d 628 [258 P.2d 590].)

We conclude, therefore, that the Limited Obligation Bond Law is a valid general law, and no question having been raised that the city of Walnut Creek did not act in accordance therewith, it is ordered that pursuant to stipulation of the parties heretofore filed, waiving the statutory time within which such writ may issue, that such peremptory writ issue forthwith.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.