[L. A. No. 24468.  In Bank.  Apr. 19, 1957.]

STATE OF CALIFORNIA, SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and RAYMOND C. WALTERS et al., Respondents.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, Patrick T. McCormick and F. G. Girard, Deputy Attorneys General, for Petitioner.

Everett A. Corten, Daniel C. Murphy, Edward A. Sarkisian, Donald Gallagher and Loton Wells for Respondents.

SCHAUER, J.—Petitioner State of California Subsequent Injuries Fund seeks annulment of a purported apportionment or contribution award against it made by respondent commission directly in favor of an employe who suffered permanent partial disability from silicosis resulting from successive employments in underground metal mining. We have concluded that petitioner's attacks upon the constitutionality of the provisions of section 5500.5 of the Labor Code, under which the award was made, are (upon any proper interpretation and application of the legislation) without merit, but that contrary to the provisions of that section and beyond the scope of its intendments the commission erroneously issued an award of workmen's compensation against petitioner directly in favor of the employe (rather than an apportionment or reimbursement award in favor of one or more of his employers against whom award in his favor could be made) and that therefore the award should be annulled and the matter remanded for further proceedings in accordance with the terms of the statute.

Reference is made to the companion case of *Subsequent Injuries Fund* v. *Industrial Acc. Com., Sac. 6788, ante,* p. 355 [310 P.2d 1], for a more complete statement of the provisions of section 5500.5, here involved.

In the present case the commission found that the employe had suffered permanent disability equivalent to 6½ per cent, resulting from silicosis contracted after 158.5 months of exposure in underground metal mining, and that "Liability for compensation should be apportioned among the various *insurance carriers* [italics added] in accordance with the periods of their coverage during said period of employment and exposure, which apportionment is as follows:" Four "Defendants" are then listed, including petitioner Subsequent Injuries Fund, and a percentage of liability as well as the monetary liability of each is set forth. The award was made "in favor of Raymond C. Walters against [the four "Defendants," including petitioner] . . . in the percentages as provided herein in" the findings.

The parties agree that the award against petitioner is based upon section 5500.5 of the Labor Code, although neither the findings nor the award so state. There is, however, no suggestion that the Fund was an employer, or insurance carrier of an employer, engaged in underground metal mining. As ground for annulment of the award, petitioner first attacks the constitutionality of certain provisions of that section, urg-

ing that an unreasonable discrimination is made in favor of employers engaged in underground metal mining as distinguished from other employers.

The section (Lab. Code, § 5500.5) provides, among other things, that "In any case involving a claim of occupational disease contracted as a result of more than one employment, the employee making the claim or his dependents, may elect to proceed against any one or more *of the employers* . . . and any award which the commission shall issue awarding compensation benefits shall be a joint and several award as against *any two or more employers* who may be held liable. . . . At any time within one year after the commission has made an award for compensation benefits in connection with an occupational disease, *any employer held liable under such award may institute proceedings before the commission* for the purpose of determining an apportionment of liability or right of contribution [*which proceedings*] . . . *shall be limited to a determination of the respective contribution rights, interests or liabilities of all the employers* joined in the proceeding, either initially or supplementally." (Italics added.) If, however, the disability of the employe resulted "from silicosis in underground metal mining operations," then "If any of the employers who have not contributed to payment of the original award shall be without the commission's jurisdiction, or are dead, insolvent, or not subject to enforcement of awards against them for such contributions, either directly or through solvent insurance carriers, then upon such showing being made to the satisfaction of the commission, it shall make an award *in favor of the employer or employers who have paid the original award,* payable out of the [Subsequent Injuries Fund] . . . in an amount equal to the unreimbursed portions of the original payment or payments to which such employer or employers are found entitled as aforesaid." (Italics added.) Then follow the declarations of public policy and public welfare made by the Legislature, based upon its expressly stated findings of the special character of the underground metal mining industry with respect to silicotic hazard and investment hazard.[1]

Petitioner asserts that "Concerning a special silicotic hazard in the underground metal mining industry, it is submitted that such does not exist." As a basis for such assertion it

[1]Such findings are set forth in full in the quotation from section 5500.5, found in the companion case of *Subsequent Injuries Fund* v. *Industral Acc. Com., Sac. 6788, ante,* p. 355 [310 P.2d 1].

relies upon statements found in bulletins published by certain state and federal agencies and upon a report of an interim committee of the California state Senate which indicate that "silicosis can be acquired" in many other industries as well as in underground metal mining.

Petitioner also argues that "Even if it be assumed that a special silicotic hazard does exist in the underground metal mining industry in California, that alone would not result in this discriminatory legislation being constitutional, for the *crucial* distinction between the underground metal mining industry and other industries by the legislature is the finding of an investment hazard which results in the closure of mines and disappearance of employers, with the consequent inability to enforce awards against them, which in turn results in the inequity of solvent employers or their insurance carriers bearing the entire award. As Section 5500.5 authorizes the use of public funds to the *employer* who has paid an award not in proportion to the employee's employment with such employer, it is obvious that this is the evil the statute was concerned with correcting. Therefore, if there is *no* basis for the legislative conclusion that awards cannot be enforced against insolvent mines, there can be no valid distinction between the underground metal mining industry and other industries on this ground. It is submitted that such is the case." In support of this latter argument petitioner states that records of the Department of Industrial Relations show that in 1951, the year section 5500.5 was adopted, there were 236 permissibly self-insured employers (Lab. Code, § 3700), only one of which was in the metal mining industry, although during the same year there were 266 "operating producers of *metallic* minerals in California." Thus, argues petitioner, "it appears . . . that all metal mines except one carried insurance against liability to pay compensation . . . [and so] it is obvious that an award made against an insolvent mine is not unenforceable, because even if the employer cannot respond, the insurance company can. Therefore, no inequity to solvent employers or their insurance carriers can occur from the insolvency of a domestic mine, for at the time the section was enacted only one operating mine failed to carry insurance, and this [self-insured] mine had a substantial surety bond on deposit with a state official. Thus, the underground metal mining industry was as fully able to respond to Industrial Accident Commission awards as employers in any other industry where a silicotic risk is present, and there is no justification for the

discrimination based on investment risk resulting in noncompliance with commission awards and the consequent inequity to other solvent employers or insurance carriers.''

As pointed out by respondents, however, the issue is not whether facts existed which might have supported a contrary determination by the Legislature, but, rather, whether the classification between underground metal mining and other industries involving a silicotic hazard, and the legislative findings upon which such classification is based, are so palpably arbitrary that no set of facts can reasonably be conceived that would sustain them. (See 11 Cal.Jur.2d 726-728, and cases there cited.) ■ Thus, in *Sacramento M. U. Dist.* v. *Pacific Gas & Elec. Co.* (1942), 20 Cal.2d 684, 693 [5] [128 P.2d 529], it is declared that ''Wide discretion is vested in the Legislature in making the classification and every presumption is in favor of the validity of the statute; the decision of the Legislature as to what is a sufficient distinction to warrant the classification will not be overthrown by the courts unless it is palpably arbitrary and beyond rational doubt erroneous. [Citations.] ■ A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it.''

■ Further, in *In re Herrera* (1943), 23 Cal.2d 206, 212 [2] [143 P.2d 345], the rule is again quoted that ''The authority and the duty to ascertain the facts which will justify classified legislation must of necessity rest with the legislature, in the first instance, to whom has been given the power to legislate and not to the courts and the decision of the legislature in that behalf is ordinarily conclusive upon the courts. Every presumption is in favor of the validity of the legislative act. . . .'' (See also *Jersey Maid Milk Products Co.* v. *Brock* (1939), 13 Cal.2d 620, 636 [1] [91 P.2d 577].) ■ In *Lockheed Aircraft Corp.* v. *Superior Court* (1946), 28 Cal.2d 481, 484 [171 P.2d 21, 166 A.L.R. 701], involving the constitutionality of section 1101 of the Labor Code, it was once more pointed out that ''All presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. ■ Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakably appears. [Citations.]'' ■ And in *Lelande* v. *Lowery* (1945), 26 Cal.2d 224, 232 [6], 234 [7] [157 P.2d 639, 175 A.L.R. 1109], the court declared that ''When the classification made by the Legislature is questioned, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts is pre-

sumed, and one who assails the classification must carry the burden of showing that it is arbitrary. [Citations.] . . . ■ [I]t is not our concern whether the Legislature has adopted what we might think to be the wisest and most suitable means of accomplishing its objects. [Citations.]'' (See also *City of Walnut Creek* v. *Silveira* (1957), 47 Cal.2d 804, 811 [306 P.2d 453].)

■ Applying these rules to the reimbursement provisions of section 5500.5, here attacked by the Subsequent Injuries Fund, it is at once apparent that no proper basis has been shown for interference by the courts with the findings and classification made by the Legislature. The statistics submitted by the Fund cannot be accepted by this court as conclusive on the subject, and as pointed out by respondents there are special factors affecting underground metal mines which the Legislature could have considered. One such factor is that such miners are frequently nomadic, traveling from one section of the country to the other in search of work as mines become exhausted or are closed because of the seasonal nature of mining in mountain terrain, whereas employes exposed to silicosis in other industries are usually more stable and thus do not present the hazard to less than all of their employers of becoming liable for an employe's entire disability due to silicosis. Moreover the argument presented by the Fund overlooks the fact that section 5500.5 provides for reimbursement not only where certain of the employers are insolvent but also where any of the employers are ''without the commission's jurisdiction.''

Further, as pointed out by respondents, with respect to the investment hazard the liability of the mining companies for silicosis, which results in the inequity found by the Legislature to exist, arises largely because of the exposure of miners to silicosis while employed in mines during years prior to the effective date of section 5500.5. Because of such liability the cost of operating the mines is greater because of higher premiums that California mining companies must pay for compensation insurance. Another factor is that the United States Government has pegged the price of gold at $35 an ounce since 1934, thus limiting the price gold mining companies can obtain for their product although their costs of operation, including higher premiums for the silicosis hazard, have increased greatly since 1934. The expensive equipment required in underground metal mines to safeguard against silicosis, as well as the fact that a mining venture is much more of a gamble than many business undertakings, are other mat-

ters which may have been considered by the Legislature in providing for the reimbursement rights here involved.

Subsequent Injuries Fund also urges that a reimbursement award against it violates the provisions against a gift of public money, found in section 31 of article IV of the state Constitution. Payments from the Fund to an injured employe have been upheld as against a similar contention, on the ground that provision for the Fund is "encompassed within the Legislature's 'plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation' (art. XX, § 21)." (*Subsequent etc. Fund* v. *Industrial Acc. Com.* (1952), 39 Cal.2d 83, 88 [2] [244 P.2d 889].) The same may be said of provision for payment from the Fund to correct inequities resulting when less than all of the employments contributing to the employe's silicosis are forced to provide payment of his award.

Finally, the Fund urges that section 5500.5 is unconstitutional in that it "purports to invest jurisdiction in the Industrial Accident Commission to apportion the liability and rights of contribution between employers for the payment of a workmen's compensation award subsequent to the rendition of the latter in favor of an employee," in violation of the limited jurisdiction conferred upon the commission by section 21 of article XX of the state Constitution. However, supplemental apportionment proceedings likewise constitute a reasonable step in the creation and enforcement of a complete system of workmen's compensation. In *Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946), 29 Cal.2d 79, 82-86 [172 P.2d 884], an award in favor of an employe disabled by silicosis, and against only one of the employers, was affirmed with the further holding and order that "petitioner [the insurance carrier] shall have the right to have determined the issue of apportionment among the carriers and the employer while uninsured, and the case is remanded to the . . . Commission for the purpose of making such apportionment, and ordering the other carriers and the employer to reimburse petitioner accordingly." (See also *Fireman's Fund Indem. Co.* v. *Industrial Acc. Com.* (1952), 39 Cal.2d 831, 835-836 [250 P.2d 148].) The Fund's contention on this point is without merit.

Petitioner also contends that the award against it cannot stand in its present form, because made directly in favor of the employe, rather than as an order of reimbursement of an employer who had previously paid the award to the employe under the provisions of section 5500.5. We are persuaded that this contention is meritorious.

The first paragraph of the section provides that "Where a claim for compensation benefits is made on account of an occupational disease which may have arisen out of more than one employment, the application [for compensation benefits] shall state the names . . . of all employers . . . [Provisions follow for joinder of omitted employers at or prior to the first hearing.] Subsequent to the first hearing the commission shall join as a party defendant any additional employer when it appears that such employer is a proper party, but the liability of such employer shall not be determined until supplemental proceedings are instituted."

The second paragraph states that "the employee . . . or his dependents, may elect to proceed against any one or more of the employers named in the application. Where such an election is made . . . any award . . . shall be a joint and several award as against any two or more employers who may be held liable . . . [and although during the proceeding additional proper parties may be joined] the liability of such [joined] employer shall not be determined until supplemental proceedings are instituted. Any employer joined as a defendant subsequent to the first hearing or subsequent to the [employe's] election . . . shall not be entitled to participate in any of the proceedings prior to the commission's final decision . . . but may be permitted to ascertain from the employee or his dependents [certain limited information] . . . On supplemental proceedings, however, the right of the employer to full and complete examination or cross-examination shall not be restricted." The third paragraph of the section provides that within one year after the award, any employer held liable to the employe "may institute proceedings before the commission for the purpose of determining an apportionment of liability or right of contribution . . ."

The next three paragraphs set forth the special provisions concerning silicosis resulting from underground metal mining, such as here involved. It is first stated that "In any [apportionment or contribution] proceeding . . . [involving] silicosis in underground metal mining operations, the determination of the respective rights and interests of all of the employers joined in the proceedings either initially or supplementally shall be as follows:" Next is a provision that all employers whose mining employments contributed to the silicotic exposure "shall be jointly and severally liable." Then follows the provision that "If any of the employers who have not contributed to payment of the original award shall be without the commission's jurisdiction, or are dead, insolvent,

or not subject to enforcement of awards against them for such contributions, either directly or through solvent insurance carriers, then upon such showing being made to the satisfaction of the commission, it shall make an award in favor of the employer or employers who have paid the original award, payable out of the'' Subsequent Injuries Fund. Next come the legislative declarations of public policy and public welfare, of the special character of underground metal mining with respect to silicotic hazard and investment hazard, and of the inequity arising if less than all of the employers involved are charged with total ultimate liability. This sentence then follows: ''Therefore the Legislature finds that, *to the extent that the commission determines that proper contributions to a joint and several award* for compensation for silicosis *cannot be enforced against an employer* who is or was engaged in underground metal mining for any of the above reasons, it shall direct that contribution shall be paid, either *directly or by way of reimbursing any employer or employers who have paid said award,* by payment from the'' Subesquent Injuries Fund. (Italics added.)

In the present case, as already noted, the award was directly in favor of the employe and against four ''defendants,'' including Subsequent Injuries Fund, all of which were denominated as ''insurance carriers.'' This procedure does not find support in the statute. Although section 5500.5 is anything but a model of clarity and precision, its general tenor with respect to payments from the Fund contemplates that it is failure of some of the employers to ''contribute to payment of the original award'' which in turn will give rise to a right of contribution from the Fund in favor of employers who have paid, and that such right of contribution is to be determined separately from the award made in favor of the injured employe. The section in specific and positive terms directs the commission to ''make an award [for reimbursement] in favor of the employer or employers who have paid the original award,'' and it is only four rather long sentences later that the statement appears that the Legislature ''finds'' that the commission ''shall direct that contribution shall be paid [from the Fund], either directly or by way of reimbursing any employer or employers.'' This legislative ''finding,'' viewed in the light of its context, does not appear to have been intended to authorize in initial proceedings *an original award to the employe* to be paid directly from the Fund.

The Fund suggests that, since under the statute its liability

is secondary and arises only *after* an original award in favor of the employe, the language of the "finding" concerning payment of contribution "directly" from the Fund appears to mean that *the employer entitled to contribution* may benefit in either one of two ways to be designated by the commission in its award of contribution from the Fund. The alternatives are: 1. The employer (or carrier) may be required to pay the total award and receive in reimbursement from the Fund that portion of the total which the commission then or subsequently determines upon the facts of the case and in accord with the law to be apportionable against the Fund. 2. The commission upon determining the apportioned share for which each employer (or carrier) is liable may so frame the award that payments from each employer shall constitute only his apportioned liability and the payment due from the Fund shall be paid directly to the claimant.

At first glance the second of the alternatives above stated may appear to be essentially the same as the procedure in this case, but upon reflection there is seen to be a substantial difference. In the case before us the apportionment as against certain employers and the Fund was made in the primary proceeding begun by the employe. In the second of the alternatives suggested by the Fund the apportionment, while requiring a payment directly from the Fund to the employe, would be made not in the original proceeding inaugurated by the employe but in a subsequent proceeding incepted by an employer (or carrier). From the standpoint of the employe it is desirable that the initial proceeding be kept as simple as possible, and that the employe should not be concerned with whether all of his employers or their insurance carriers have been sought out, or of even participating as an active party in proceedings necessary to determine the ultimate apportionments of liability as among the employers and the Fund. In fact, previous to the adoption of section 5500.5, we had already held in *Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946), *supra,* 29 Cal.2d 79, 82-86, that the employe could look to any one or all of his prior employers and that their liability was joint and several.

Furthermore, section 5500.5 itself distinguishes materially between the initial proceeding by the employe looking directly toward his compensation benefits as against any one or more available employers, and subsequent proceedings (in which the employe is not interested) to the end of apportionment among multiple employers or carriers. As hereinabove shown the section provides that "the employee . . . or his depend-

ents, may elect to proceed against any one or more of the employers named in the application,'' and although during the proceeding additional parties may be joined ''the liability of such [joined] employer shall not be determined until supplemental proceedings are instituted.'' Also it is provided that ''On supplemental proceedings . . . the right of the employer to full and complete examination or cross-examination shall not be restricted.'' It would thus appear to be a more orderly procedure and more in keeping with the general intendments of section 5500.5 for the commission to make its initial determination solely as between the employe or his dependents and the one or more of his employers (or their carriers) then available, leaving to supplemental proceedings the ultimate apportionment as among the several employers and the Fund.

The following considerations lend further support to the conclusion above announced. Bearing in mind that in the original proceeding by the employe each employer named and against whom an award can be made is jointly and severally liable for the entire award, it becomes obvious that the provision permitting an employer (who has been held liable) to institute supplemental proceedings to compel apportionment as among all potentially liable employers and, in a proper case, the Fund, is at least primarily for the benefit of the employers, rather than for the benefit of the employe.[2] The attempt to include the Fund in the primary proceeding as, in effect, an employer or insurance carrier against whom a portion of the original award might be allocated would seem to tend to confuse and delay rather than to simplify or expedite recovery by the employe from the employer or employers against whom he has elected to proceed. Emphasizing this consideration is the provision of the section that ''At any time within one year *after the commission has made an award* for compensation benefits . . . any employer held liable under

[2]We do not now have before us, and hence express no opinion concerning, whether any right to payment from the Subsequent Injuries Fund would or constitutionally could arise in favor of the employe in a case where none of his employers is within the commission's jurisdiction or subject to enforcement of an award in favor of the employe, either directly or through solvent insurance carriers. Since conceivably the factual hypothesis suggesting this question might sometime arise, it would appear to be a proper subject for timely legislative attention to the end of making it clear whether there is or is not a legislative intent to impose, or to attempt to impose, on the Subsequent Injuries Fund (which means the taxpayers of the state, not the mining industry) the total ultimate liability for the defined silicotic hazard in cases where there is no solvent and available employer or carrier.

such award may institute proceedings . . . for the purpose of determining an apportionment of liability or right of contribution.'' (Italics added.) In addition, as noted, it is only upon a showing that those employers who have not contributed to payment of the original award are ''without the commission's jurisdiction, or are dead, insolvent, or not subject to enforcement of awards against them for such contributions,'' that the right of reimbursement from the Fund arises. As pointed out by the Fund, this showing would necessitate proof which might not be available until it had been first determined whether a particular employer or insurance company was or was not actually able to satisfy the award; i.e., attempted enforcement of an award might well be a reasonable element of such a showing.

Respondent commission urges, however, that petitioner has not shown that the results would have been any more favorable to it if the contribution award against it had been issued in proceedings separate from those in which the employe's award was made. However, where the statutory provisions giving rise to a right of contribution also provide the procedure to be followed, it is fundamental that the commission should conform to the legislative directive.

For the reasons stated the contribution award against petitioner is annulled and the matter is remanded for further proceedings not inconsistent with the views herein expressed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.