[Sac. No. 6788.   In Bank.   Apr. 19, 1957.]

STATE OF CALIFORNIA, SUBSEQUENT INJURIES FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and GUST ERICKSON et al., Respondents.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, and F. G. Girard, Deputy Attorney General, for Petitioner.

Everett A. Corten, Daniel C. Murphy, Donald Gallagher, Loton Wells, Leonard, Hanna & Brophy and Ivan A. Schwab for Respondents.

Mullen & Fillippi as Amicus Curiae on behalf of Respondents.

SCHAUER, J.—Petitioner, State of California Subsequent Injuries Fund, seeks annulment of an award against it made by respondent commission in a proceeding by an employer's insurance carrier to secure, under the provisions of section 5500.5 of the Labor Code, apportionment of liability to an employe who had become permanently totally disabled from silicosis suffered as the result of successive employments. We have concluded that respondent Industrial Accident Commission erroneously applied the section retrospectively, and that the award should be annulled.

The facts appear to be undisputed. The employe, Erickson, was employed as an underground miner over the period 1924-1949 by various metal mining employers; during such periods of employment he was exposed to free silica dust, the cumulative effect of which contributing exposures was to cause the disease of silicosis. This chronology followed:

September 10, 1949. The disease, which constitutes an injury within the meaning of the workmen's compensation law, culminated in disability (total). In the subsequent proceedings the commission found, in accordance with statutory law, that "said date accordingly constitutes the date of injury herein." (See Lab. Code, § 5412[1]; *Alford* v. *Industrial Accident Com.* (1946), 28 Cal.2d 198, 203-204 [2] [169 P.2d 641].)

August, 1950. The employe initiated proceedings before the Industrial Accident Commission to obtain an award solely against Central Eureka Mining Company, one of his employers during the period when he was contracting silicosis.[2] A few days later respondent State Compensation Insurance Fund,

---

[1]Section 5412: "The date of injury in cases of occupational diseases is that date upon which the employee first suffered disability therefrom and either knew, or in the exercise of reasonable diligence should have known, that said disability was caused by his present or prior employment."

[2]Prior to the date of injury in this case (September 10, 1949) this court had determined, in *Colonial Ins. Co.* v. *Industrial Acc. Com.* (1946), 29 Cal.2d 79, 82-86 [172 P.2d 884], that "in progressive occupational diseases . . . the employee may, at his option, obtain an award for the entire disability against any one or more of successive employers or successive insurance carriers if the disease and disability were contributed to by the employment furnished by the employer chosen or during the period covered by the insurance even though the particular employment is not the sole cause of the disability," and that in a subsequent independent proceeding among themselves the successive carriers or employers may secure an apportionment by the Industrial Accident Commission of the share of the employe's total award that each should bear.

the insurance carrier for the company, was joined as a defendant.

September 22, 1951. Section 5500.5 of the Labor Code became effective, providing, among other things, for reimbursement from the Subsequent Injuries Fund (sometimes hereinafter called the Fund) by means of ''an award in favor of the employer'' who has paid the original award to an employe suffering silicosis resulting from underground metal mining operations, where any of the other employers who have not contributed to such payment are ''without the commission's jurisdiction, or are dead, insolvent, or not subject to enforcement of awards against them for such contributions, either directly or through solvent insurance carriers.'' Prior to enactment of this section no such reimbursement provision existed.

September 28, 1951. The commission entered an award in favor of the employe and against State Compensation Insurance Fund (sometimes hereinafter called the carrier) for the entire disability.

April, 1952. The carrier[3] initiated supplemental proceedings before the commission for an apportionment of liability against several named employers and the Subsequent Injuries Fund under section 5500.5 of the Labor Code.

August 13, 1954. The commission entered its findings, order and award in favor of the carrier apportioning liability against some 19 employers or their insurance carriers, finding that five of the employers and their carriers were ''without the Commission's jurisdiction and . . . [not] subject to the enforcement of any awards for contribution'' in this state and charging the Subsequent Injuries Fund with the proportions of liability otherwise chargeable to those five employers.

December 5, 1955. Following petitions for reconsideration, further hearing was had and the commission entered its decision confirming in all material respects the award of August 13, 1954.

Petitioner State of California Subsequent Injuries Fund, as ground for annulment of the award against it, first contends that, contrary to the intention of the Legislature, the commission retrospectively applied the reimbursement provisions of section 5500.5, which did not become effective until more than two years *after* the date of the employe's injury.

---

[3]Because of the conclusion reached (that § 5500.5 is here inapplicable because it is not retrospective) we do not consider the Fund's contention that the language of the statute does not in any event authorize reimbursement to a carrier as distinguished from the employer.

The Fund states in its brief that it "has never contended that section 5500.5 can not be applicable to periods of silicotic exposure occurring prior to the passage of the section. What we do contend is that it cannot be applied to cases where the date of injury [i.e., the date on which the disease culminates in disability] precedes the passage of the section for that is the time that liability under the Workmen's Compensation Act is to be determined." All parties appear in agreement that the ascertainable legislative intent in enacting the subject section should be the controlling factor on this point and that the section is to be construed with reference to its purpose and the objects intended to be accomplished by it. (See 23 Cal.Jur. 725-727, 764-765.)

Section 5500.5 deals chiefly with claims for compensation benefits made "on account of an occupational disease which may have arisen out of more than one employment." The section prescribes the form and content of an application for such benefits; provides for joinder or bringing in of former employers; states that the employe or his dependents may elect to proceed against any one or more of the employers, and that any award shall be joint and several as against any two or more employers held liable; and provides that "At any time within one year after the commission has made an award" any employer held liable may institute supplemental proceedings before the commission for the purpose of determining an apportionment of liability or right of contribution, but that such proceedings shall not diminish, restrict, or alter in any way the recovery previously allowed the employe or his dependents. The section next provides as follows:

"In any proceeding before the commission for the purpose of determining an apportionment of liability or of a right of contribution where any employee incurred a disability or death resulting from silicosis in underground metal mining operations, the determination of the respective rights and interests of all of the employers joined in the proceedings either initially or supplementally shall be as follows:

"(a) All employers whose underground metal mining operations resulted in a silicotic exposure during the period of the employee's employment in such operations shall be jointly and severally liable for the payment of compensation and of medical, surgical, legal and hospital expense which may be awarded to the employee or his estate or dependents as the result of disability or death resulting from or aggravated by such exposure.

"(b) If any of the employers who have not contributed to payment of the original award shall be without the commission's jurisdiction, or are dead, insolvent, or not subject to enforcement of awards against them for such contributions, either directly or through solvent insurance carriers, then upon such showing being made to the satisfaction of the commission, it shall make an award in favor of the employer or employers who have paid the original award, payable out of the fund used for payment of the additional compensation provided for in Section 4751[4] of this code, in an amount equal to the unreimbursed portions of the original payment or payments to which such employer or employers are found entitled as aforesaid. The use of the fund for such reimbursement in addition to the purposes specified in Section 4751 of this code is hereby authorized. The Legislature finds that as a matter of public policy and public welfare, sufferers from silicosis resulting from employment in underground metal mines should be compensated for such disability; that due to the peculiar nature of this disease it often does not manifest itself until long after periods of exposure have expired; that this frequently results in disability occurring in or after the last of a series of employments where such exposure existed; that underground metal mining is a class of industry having special character, both as to silicotic hazard and investment hazard; that the latter hazard has resulted in the past in closure of mines, disappearance or financial nonresponsibility of former owners or lessees of such mines and consequent inability of the commission to enforce against them compensation awards for proportionate liability in silicosis cases. It is inequitable that total ultimate liability should fall on one or more such employers who happen to be solvent or have solvent insurance carriers within the commission's jurisdiction or in reach of its process. Therefore the Legislature finds that, to the extent that the commission determines that proper contributions to a joint and several award for compensation for silicosis cannot be enforced against an employer who is or was engaged in underground metal mining for any of the above reasons, it shall direct that contribution shall be paid, either directly or by way of reimbursing any employer or employers who have paid said award, by payment from the fund provided for in Section 4751 of this code. Such payments or reimbursement for payments the Legislature finds will protect employees

[4]Section 4751 sets forth the circumstances under which payment to an injured employe will be made from the Subsequent Injuries Fund.

in the metal mining industry and will promote the general public welfare in mining communities. . . .''

The Fund, relying upon *Aetna Cas. & Surety Co.* v. *Industrial Acc. Com.* (1947), 30 Cal.2d 388 [182 P.2d 159], urges that the law in effect at the time of the injury is the law governing all rights and liabilities arising out of the injury. That case dealt with an amendment to section 4661 of the Labor Code, under which amendment an award was made in an amount greater than it would have been had the commission applied the section as it read at the date of injury. This court declared that (pp. 392-393 of 30 Cal.2d) ''Since the industrial injury is the basis for any compensation award, the law in force at the time of the injury is to be taken as the measure of the injured person's right of recovery. The 1945 amendment of section 4661 increased the amount of compensation above what was payable at the date of the injury, and to that extent it enlarged the employee's existing rights and the employer's corresponding obligations. The amendment is therefore clearly substantive in character, and the commission, by applying it in the present proceedings, gave it a retrospective operation.

''The authorities support the conclusion that a statute changing the measure or method of computing compensation for disability or death is given retrospective effect when applied to disability or death resulting from an injury sustained before the effective date of the statute. . . .

''It is an established canon of interpretation that statutes are not to be given a retrospective operation unless it is clearly made to appear that such was the legislative intent. [Citations.] . . . [P. 394] [T]he distinction [between purely ''procedural'' and purely ''substantive'' legislation] relates not so much to the form of the statute as to its effects. If substantial changes are made, even in a statute which might ordinarily be classified as procedural, the operation on existing rights would be retroactive because the legal effects of past events would be changed, and the statute will be construed to operate only in futuro unless the legislative intent to the contrary clearly appears. [Citations.]''

With respect to the contention that the Legislature intended to give retrospective operation to the amendment, the court stated that (p. 395), ''That intention does not appear on the face of the amendment since no express provision was made for its application to cases involving prior injuries. . . . [L]egislative intent in favor of the retrospective opera-

tion of a statute cannot be implied from the mere fact that the statute is remedial and subject to the rule of liberal construction. [Citation.] . . .

"[P. 396] Our conclusion is that it does not clearly appear from the language of the amended statute, or by necessary implication, that the Legislature intended it to apply in cases where the injury occurred before the effective date of the enactment. On the contrary, it must be assumed that the Legislature was acquainted with the settled rules of statutory interpretation, and that it would have expressly provided for retrospective operation of the amendment if it had so intended. Accordingly the commission improperly gave a retrospective effect to the amendment by applying it to claims arising out of injuries occurring prior to the date of its enactment."

And in *Krause* v. *Rarity* (1930), 210 Cal. 644, 655 [11] [293 P. 62, 77 A.L.R. 1327], the court observed that "although the legislature has the power to give a statute retrospective operation, if it does not impair the obligation of contracts or disturb vested rights, yet it is to be presumed that no statute is intended to have that effect, and it will not be given that effect, unless such intention clearly appear from the language of the statute. [Citation.]" (See also *People* v. *Allied Architects Assn.* (1927), 201 Cal. 428, 436-437 [6] [257 P. 511].)

Nowhere in section 5500.5 has the Legislature declared that the reimbursement provisions here involved shall be given retrospective operation. Thus, despite the legislative declarations and findings concerning public policy and public welfare and of the inequity resulting if total ultimate liability in silicotic cases should fall on less than all of the employers or carriers in the contributing employments, and despite the arguments of respondents and of amicus curiae that the statute is remedial and curative in nature, it is clear that under the above quoted rules, as expressed in the Aetna case, the provisions should not be retrospectively applied and that inasmuch as the controlling event of injury occurred prior to effective date of the section, the award now under attack should be annulled.

Respondents argue, however, that whether the injury precedes or follows the effective date of the section is of no significance because "in enacting section 5500.5, the . . . Legislature has not taken away or impaired any vested right of any person, or created a new obligation or duty to be performed by any person. . . . The Subsequent Injuries Fund is the State government itself. Through section 5500.5, the State has conferred a remedial benefit upon California mining com-

panies and their insurance carriers to achieve a public purpose.'' This argument is not persuasive. Even though payments from the Subsequent Injuries Fund (which, of course, is a fund provided by legislative appropriation) to injured employes themselves may likewise be considered the conferring of a remedial benefit to achieve a public purpose, pursuant to the Legislature's ''plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation'' (art. XX, § 21; *Subsequent etc. Fund* v. *Industrial Acc. Com.* (1952), 39 Cal.2d 83, 88 [244 P.2d 889]; see also Lab. Code, §§ 4750-4755), the principle appears to have been consistently followed that payments from the fund to an employe will not be made where the date of the subsequent injury preceded the effective date of the fund legislation or an otherwise applicable amendment thereto which would enlarge the employe's rights. (See *Whittingslow* v. *Industrial Acc. Com.* (1949), 14 Cal.Comp.Cases 6, writ denied; *Cravens* v. *Industrial Acc. Com.* (1951), 16 Cal.Comp. Cases 227, writ denied, hearing by Supreme Court denied; *Morrell* v. *Industrial Acc. Com.* (1952), 17 Cal.Comp.Cases 324, writ denied; see also *Associated Indem. Corp.* v. *Industrial Acc. Com.* (1948), 13 Cal.Comp.Cases 240, writ denied.) In the Cravens case, in which this court denied a hearing, a previously partially disabled employe met with an industrial injury in 1946. The commission found that she had suffered permanent total disability, of which 60 per cent could be attributed to the industrial injury, but refused to make an award against the Subsequent Injuries Fund. It took the position that the 1949 amendment to section 4751 of the Labor Code (enlarging the employe's rights so as to cover *all* pre-existing disabilities) could not be applied where the subsequent injury had occurred in 1946, and that the preexisting disability of the employe did not come within the terms of the section as it read before the 1949 amendment.

Although any inequity to either an injured employe or an unreimbursed employer may be considered just as great whether the date of injury occurs before or after the effective date of the statute under which they claim rights to payments from the Subsequent Injuries Fund, it would appear that any arguments seeking relief upon such a basis should more appropriately be addressed to the Legislature, than to the courts. As urged by the Subsequent Injuries Fund, no reason is shown why an employer should be placed in a better position than an employe with respect to the date as to which rights to pay-

ment from the fund may attach, and that just as an employer's liability to his employe is determined as of the date of injury, so should that date determine his rights to contribution from the fund.

■ Moreover, in the Whittingslow case (*Whittingslow* v. *Industrial Acc. Com.* (1949), *supra,* 14 Cal.Comp.Cases 6), the commission declared the rule that an employe who suffered a subsequent injury in 1942 could not recover under the Subsequent Injuries Fund legislation (effective in 1945), unless it clearly appeared from the language of the statute that retrospective effect was intended, and that no such legislative intent was shown. Writ of review was denied in January, 1949, more than two and one-half years prior to the effective date of section 5500.5, with which we are here concerned. It must therefore be presumed that the Legislature was aware of that decision, as well as of the canon of interpretation applied in the Aetna case (*supra,* 30 Cal.2d at p. 393 [5]), and intentionally failed to provide for retrospective operation of the section. (See *Buckley* v. *Chadwick* (1955), 45 Cal.2d 183, 200 [14] [288 P.2d 12, 289 P.2d 242] ; *Cole* v. *Rush* (1955), 45 Cal.2d 345, 355 [8], [9] [289 P.2d 450] ; see also 23 Cal. Jur. 783, § 159, and cases there cited.)

■ Respondents also suggest that the provision in section 5500.5 for a one-year period after the award of compensation benefits, within which any employer held liable may institute supplemental apportionment proceedings, indicates that the date of the award of such benefits should be the controlling date with respect to the employer's right to contribution from the Fund. Such one-year period appears, however, to be only the customary time limitation provision, and similar provisions in statutes governing the employe's rights to benefits have never been viewed as authorizing a retrospective application of a statute enlarging those rights. Respondents' position on this point is without merit.

■ To summarize : As pointed out by the Fund, the question here is not what the Legislature might have done with respect to providing for retrospective application of the portions of section 5500.5, which are here involved, but what it did do. It used no language showing that it intended retrospective effect and, therefore, under the rules carefully stated and followed in the Aetna case, no such effect will be given by the courts under the guise of construction. The award against Subsequent Injuries Fund should therefore be annulled.

This conclusion makes unnecessary a discussion of other con-

tentions advanced on behalf of the Subsequent Injuries Fund.[5]

Certain of the insurance carriers held liable for a portion of the total award ask in their brief that, in case of annulment of the award against the Fund, the court then determine on this review the question of ''What happens to the 34.6 per cent of the workmen's compensation benefits paid, or to be paid, to the . . . [employe] which had been charged to the Subsequent Injuries Fund?'' Various alternatives are suggested as to how such 34.6 per cent might be charged. However, that question is not before us on this petition for review, filed by Subsequent Injuries Fund, in which only the award against itself is attacked, and it therefore follows that the matter should be left for original determination by the Industrial Accident Commission. (See Lab. Code, § 5952.)

For the reasons above stated the award is annulled.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.

[5]The issue of constitutionality is discussed in the companion case of *Subsequent Injuries Fund* v. *Industrial Acc. Com. (Walters), L.A. 24468, post*, page 365 [310 P.2d 7].