[L. A. No. 24469.   In Bank.   Nov. 12, 1957.]

STATE OF CALIFORNIA, SUBSEQUENT INJURIES
FUND, Petitioner, v. INDUSTRIAL ACCIDENT COM-
MISSION et al., Respondents.

Edmund G. Brown, Attorney General, Irving H. Perluss, Assistant Attorney General, and F. G. Girard, Deputy Attorney General, for Petitioner.

Everett A. Corten, Daniel C. Murphy, Edward A. Sarkisian, Donald Gallagher and Loton Wells for Respondents.

SCHAUER, J.—Petitioner, State of California Subsequent Injuries Fund, seeks annulment of a reimbursement award against it made by respondent commission in a proceeding by various insurance carriers to secure, under the provisions of section 5500.5 of the Labor Code, apportionment of liability to an employe who in June, 1954, became permanently totally disabled from silicosis suffered as the result of successive employments over a period of some 40 years. We have concluded that the commission correctly determined that the section authorizes reimbursement from the fund to a carrier as well as to an employer, that such authorization is constitutional, and that the award should be affirmed.

Various aspects of section 5500.5 were considered by this court in the *Erickson (State* v. *Industrial Acc. Com.* (1957), 48 Cal.2d 355 [310 P.2d 1]) and *Walters (State* v. *Industrial Acc. Com.* (1957), 48 Cal.2d 365 [310 P.2d 7]) cases. In *Erickson* we held that the statute did not apply retrospectively so as to permit reimbursement where the silicosis (from underground metal mining exposures) had become disabling prior to effective date of the statute. In *Walters* constitutionality of the reimbursement provisions was upheld, with the further ruling that under the statutory language reimbursement could be ordered only in a supplemental apportionment proceeding and not in the original proceeding in which award in favor of the employe was made.

In the present (Costello) case the fund urges both (1) that the language of the statute does not authorize reimbursement

to an insurance carrier as distinguished from an employer, and (2) that if the statute does so authorize then it is to that extent unconstitutional.

 1. Although the language used does not expressly permit reimbursement payments to a carrier, it does include a legislative declaration that "It is inequitable that total ultimate liability should fall on one or more such [underground metal mining] employers who happen to be solvent *or have solvent insurance carriers* within the commission's jurisdiction or in reach of its process." (Italics added.) If an employer does have a solvent insurance carrier then of course liability, as the term is commonly used, falls on the carrier rather than on the employer. But the liability is basically that of the employer; it is essentially that of the employer because it is the premiums paid by the many employers which support the insurance carriers who, in the aggregate, constitute the medium whereby the risks and cost of the individual employers are spread over the industry as a whole. Hence, while insurance carriers are normally spoken of as "underwriters," it is ultimately the employers (and the consuming public) who pay the toll. Therefore, it is reasonable to conclude that the quoted provision contemplates reimbursement of the carrier as well as of the employer.

Moreover, as pointed out by the commission, various other statutory provisions indicate that no distinction is intended as between the employer and the carrier with respect to reimbursement rights. For instance, section 3759 of the Labor Code permits the commission to "enter its order relieving the employer from liability where it appears . . . that an insurer joined as a party . . . is liable . . ." Section 11662 of the Insurance Code provides for subrogation of the insurer to the rights of the employer.[1] Other provisions are that payment of compensation by either employer or insurer bars recovery (by the employe) from the other (Lab. Code, § 3754); that the insurer will be "directly and primarily liable" to a proper claimant for the compensation for which the employer is liable (Ins. Code, § 11651); that notice to, or knowledge of, the

---

[1]Section 11662, Insurance Code: "Whenever any employer is insured against liability for compensation with any insurer, such insurer is subrogated to the rights of the employer to recover losses arising out of any of the following acts by the insurer:

"(a) Assuming the liability of the employer for compensation in the manner provided by the law relating thereto.

"(b) Payment of any compensation for which the employer is liable.

"Such insurer may enforce any such subrogated rights in its own name."

employer of injury, is notice to the insurer (Ins. Code, § 11652); that jurisdiction over the employer is jurisdiction over the insurer (Ins. Code, § 11653).

Further, the fund presents statistics indicating that in the year (1951) that section 5500.5 became effective only *one* underground metal mining operator was permissively self-insured in this state. If reimbursement is not allowed to carriers as well as to employers, then the anomaly would be presented that, at least in the year of enactment of the section, only *one* lawfully self-insured employer in the entire state, plus employers unlawfully not insured at all, would receive direct benefits—benefits denied to insured employers. Also, as mentioned by the fund (see also *State* v. *Industrial Acc. Com.* (1957, Walters), 48 Cal.2d 365, 372 [310 P.2d 7]), insurance companies in fixing their rates take into account the inequity, declared by the statute to exist, where less than all contributing employments are forced to pay an award for disability resulting from silicosis. To deny to the carriers the reimbursement provided by section 5500.5 would likewise deny to employers who must pay the higher premiums which would then follow, the relief contemplated by the section. Such results clearly would *pro tanto* defeat rather than carry out the intent of the Legislature.

2. From the conclusions above announced it logically follows that the reimbursement provisions as applied to carriers do not breach constitutional proscriptions. As discussed in the Walters case (p. 372 of 48 Cal.2d), "with respect to the investment hazard [declared by the Legislature to adhere in the underground metal mining industry] the liability of the mining companies for silicosis, which results in the inequity found by the Legislature to exist, arises largely because of the exposure of miners to silicosis while employed in mines during years prior to the effective date of section 5500.5 [September, 1951]. Because of such liability the cost of operating the mines is greater because of higher premiums that California mining companies must pay for compensation insurance." It thus appears that the objective of lessening the investment hazard of underground metal mining operations reasonably may contemplate lessening of the insurance premiums which that industry must pay, and that the Legislature could properly determine that such objective could best be attained by requiring the reimbursement of carriers under the same circumstances as employers under the provisions of section 5500.5. As pointed out by one of the carriers here

involved, prevailing premiums charged, and those to be charged in the future, are related to and computed upon losses recently paid and to be paid, even though most of the employe's exposure occurred during years prior to 1951. Consequently there is no merit in the argument of the fund that inasmuch as the liability for silicosis arises largely from exposures occurring before 1951 no inequity exists with respect to insurance carriers because they were already compensated by the payment of premiums for risks assumed during years prior to 1951. It is. to reduce immediately for current and future operations the quantum and inequities of such risks that the legislation was enacted. As declared in the Erickson case (*State* v. *Industrial Acc. Com.* (1957), *supra*, 48 Cal.2d 355, 361, 363), the law in force upon the date of injury (i.e., the date upon which the disease culminates in disability) determines both the employe's rights to compensation and the employer's rights to contribution from the fund. Inasmuch as the current and future insurance premiums which employers must pay are determined by compensation claims which carriers have been obliged to pay in the past (i.e., upon their claims experience), it is apparent that to deny reimbursement to carriers for compensation allocable to exposures occurring prior, but for disabilities arising subsequent, to 1951 would, as hereinabove suggested, deny to employers who would have to pay the higher premiums which would follow, the relief contemplated by the statute. The inequity to employers, sought by the Legislature to be corrected, would thus continue to exist. It may be further noted that in the Erickson case (pp. 358-359 of 48 Cal.2d) the fund expressly disavowed any contention that section 5500.5 cannot be applicable to periods of silicotic exposures occurring prior to adoption of the section. Moreover, the anomaly mentioned hereinabove under point Number 1, with respect to favoring self-insured employers as well as those unlawfully not insured, if reimbursement of carriers is not authorized, would appear to raise a more serious constitutional question of unreasonable discrimination and classification as against insured employers, than is presented when reimbursement of carriers is permitted. We are convinced that, regardless of the dates of exposure, reimbursement of carriers where the date of injury occurs subsequent to the effective date of section 5500.5 is not unreasonably discriminatory and is not a gift of public funds; it is, rather, as hereinabove pointed out, ultimately reimbursement of the employers, because the industry as a whole supports the carriers, and only by permitting reimbursement to

carriers standing in the liability shoes of employers can uniformity of operation and equality of benefits in the industry be secured.

The conclusions we have reached on the merits of the controversy render unnecessary consideration of a procedural point raised by the commission.

The award is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Spence, J., and McComb, J., concurred.