[Civ. No. 18125.  First Dist., Div. One.  Apr. 7, 1959.]

COUNTY OF SANTA CLARA, Appellant, v. JACOB DOLL, Respondent.

Spencer M. Williams, County Counsel, and Robert S. Sturges, Deputy County Counsel, for Appellant.

David Henry Gill for Respondent.

HANSON, J. pro tem.*—The question here at issue is whether a county can maintain an action against an alleged natural father to recover moneys laid out, and to be laid out by it, for the support of a minor child where it must allege and prove that the child conceived during the wedlock of the mother and her legal husband is, in fact, the illegitimate child of the defendant—the alleged natural father.

If the county is not a proper party or cannot prove by competent evidence the basic fact at issue, the judgment below, sustaining the defendant's demurrer to the second amended complaint without leave to amend, was proper.

Civil Code, section 193, provides that "All children born in wedlock are presumed to be legitimate" and Code of Civil Procedure, section 1962, subdivision 5, provides: "Notwithstanding *any* other provision of law,· the issue of a wife cohabiting with her husband, who is not impotent, is *indisputably* presumed to be legitimate." (Emphasis added.) By Code of Civil Procedure, section 1963, it is stated that "All other presumptions are satisfactory, if uncontradicted. They are denominated disputable presumptions, and may be controverted by other evidence. The following are of that kind:

"31. That a child born in lawful wedlock, there being no divorce from bed or board, is legitimate."

Civil Code, section 195, reads as follows: "The presumption of legitimacy can be disputed only by *the people of the State of California in a criminal action brought under the provisions of Section 270 of the Penal Code*, or the husband or wife, or the descendant of one or both of them. Illegitimacy, in such case, may be proved like any other fact." (Emphasis added.) This section was originally enacted in 1872 and the italicized part was added by amendment in 1955, the same year that the Uniform Civil Liability for Support Act was enacted. It is to be noted that nowhere in the above section is the state or any of its subdivisions granted power to dispute the presumption of legitimacy except in a criminal case.

We think it is very clear that, were the county of Santa Clara, the appellant here, relying solely on the above quoted statutes, it would have no standing to maintain this suit.

The county, however, contends that the suit is brought, as it appears to be, under and by virtue of the Uniform Civil Liability for Support Act. (Civ. Code, §§ 241-254.) Section

---

*Assigned by Chairman of Judicial Council.

241 defines the word "obligor" as used in the act as meaning "any person owing a duty of support" and "obligee" as meaning "any person to whom a duty of support is owed" and that " 'parent' includes either a natural parent or an adoptive parent." Section 242 of the act provides: "Every man shall support his wife, and his child; . . ." Next, by section 248, it is provided as follows: "The obligee may enforce his right of support against the obligor and the county may proceed on behalf of the obligee to enforce his right of support against the obligor. Whenever the county furnishes support to an obligee, it has the same right as the obligee to whom the support was furnished, for the purpose of securing reimbursement and of obtaining continuing support. *The right of the county to reimbursement shall be subject to any limitation otherwise imposed by the law of this State.*" (Emphasis added.)

It is the plaintiff's argument that the minor child Charles has the right to challenge his own presumed legitimacy and, that being true, the county under the provisions of Civil Code, section 248, *supra*, may proceed on behalf of Charles to enforce his right of support; that it, the county, has the same right as Charles to secure reimbursement and continuing support and that the county therefore succeeds to this right of Charles. But this is a non sequitur.

The plaintiff's argument would be valid were there no question of illegitimacy involved. That is, were this a simple case where the father, about whose identity and fatherhood there is no dispute, failed or refused to support his minor child, then, under the provisions of section 248 the county could enforce the child's right to receive such support.

Even in the absence of acknowledgment or adoption, once illegitimacy is properly established and the father identified, the father would be liable for the support of the child (Civ. Code, § 196a); although there might be some question as to who could enforce the right. That is, the action would have to be brought on behalf of the illegitimate minor either by the mother or guardian, or by a guardian ad litem appointed upon the written application or with the consent of the mother, "provided, that such application or consent shall not be necessary if the mother is dead or incompetent." (Civ. Code, § 196a.)

But, in any case, illegitimacy must first be established before anyone could enforce any right against the alleged father. Appellant's second amended complaint alleges that, at the

time of conception and birth of Charles Curtis, the mother, Donna Hoofman, was married to Edgar W. Hoofman but was separated. The presumption of section 1963, subdivision 31 of the Code of Civil Procedure will control until it has been rebutted, and that raises the question presented on this appeal, to wit: whether or not the county is a proper party to rebut it. As said above, plaintiff relies heavily upon section 248 of the Civil Code as authorizing it to establish the illegitimacy of the child and then to enforce the support obligation provided for by the act. But said section certainly does not expressly grant such power to the state or to any of its subdivisions, nor does a reading of the entire act raise any implications that such power or right was being granted. These statutes purport to be support statutes and so Charles would not be an "obligee" within the meaning of section 241 so long as he is classed by law as being the legitimate child of Edgar W. Hoofman whose child he is presumed to be.

Militating against any such construction as contended for by the appellant is section 195 of the Civil Code, upon which the respondent, both in his demurrers and on this appeal, and, likewise, the lower court in dismissing the action, relied. As stated above, said section reads: "The presumption of legitimacy can be disputed only by *the people of the State of California in a criminal action brought under the provisions of Section 270 of the Penal Code,* or the husband or wife, or the descendant of one or both of them. Illegitimacy, in such case, may be proved like any other fact." (Emphasis added.)

Section 270 of the Penal Code provides that the father of either a legitimate or illegitimate minor who willfully omits without lawful excuse to furnish necessaries to his minor child is subject to fine or imprisonment or both and, if he fails to comply with a court order requiring him to make such provision, he is guilty of a felony.

It thus appears clear from section 195 of the Civil Code that appellant, an arm of the state, can dispute the legitimacy only under Penal Code, section 270 (and only then since the 1955 amendment), in criminal proceedings, *where the state would have the additional evidentiary burden of proving paternity beyond a reasonable doubt.*

A case very much in point is *In re Andrew Madalina* (1917), 174 Cal. 693 [164 P. 348, 1 A.L.R. 1629], which involved a petition for a writ of habeas corpus directed to the sheriff of Sonoma County. Petitioner had been held in custody under a commitment by a magistrate to answer before the superior

court of Sonoma County for failure to provide for his alleged illegitimate child. Petitioner had been prosecuted under section 270 of the Penal Code. The facts as stipulated were that the child in question had been born in lawful wedlock to a woman whose husband was alive when said child was born to her, and between whom there had been no judgment of divorce. At the preliminary examination, the mother testified to the nonaccess of her husband, or of any person other than the petitioner, for a period of two years next prior to the birth of the child. It was further stipulated that no action had ever been begun by the said mother or by any other person under section 196a of the Civil Code to determine the parentage of said child or to obtain a judgment against the petitioner or any other person for the support of the child. In granting the writ, the court at page 695 said: ". . . it being conceded that this child, of which the petitioner is alleged to be the father, was born in wedlock, the presumption is that it is legitimate; that the declared policy of this state as expressed in its legislation is that the presumption of such legitimacy can be disputed only by the husband or wife or the descendants of one of them; that no one else may do so; that the state having thus by express legislation inhibited any question as to the legitimacy of a child born in wedlock being raised except as above indicated, *cannot itself raise it in a criminal prosecution or other proceeding.*" (Emphasis added.)

On pages 695 and 696, the court continued: "It is, of course, to be understood, that when it is said that the state cannot itself raise the question of the legitimacy of a child born in wedlock, it is not meant that it has no power to enact legislation authorizing such inquiry in a proceeding in its name, but only that it has not so far done so; that on the contrary it has denied itself this right by expressly declaring who of others alone may do so."

At page 697, the court stated: "Public policy and common decency are opposed to the bastardizing of children born in wedlock against the wishes and perhaps against the protest of their putative parents. If neither the husband nor the wife to an existing marriage desires to raise any question of the legitimacy of a child born during its existence, the best interests and welfare of society will be promoted if the state likewise declines to intervene in raising that question."

To the same effect are *Estate of Lee* (1927), 200 Cal. 310 [253 P. 145]; *Gonzales* v. *Pacific Greyhound Lines* (1950), 34 Cal.2d 749 [214 P.2d 809]; *Buckley* v. *Chadwick* (1955), 45

Cal.2d 183 [288 P.2d 12, 289 P.2d 242] ; *Daniels* v. *Daniels* (1956), 143 Cal.App.2d 430 [300 P.2d 335].

■ In *Buckley* v. *Chadwick, supra,* at page 200, the court said: "It is a generally accepted principle that in adopting legislation the Legislature is presumed to have had knowledge of existing domestic judicial decisions and to have enacted and amended statutes in the light of such decisions as have a direct bearing on them. [Citations.]" ■ It must therefore be presumed that the Legislature was aware of the Madalina decision as well as the canon of interpretation implied in that case, and intentionally failed to provide for further extension of persons entitled to dispute the presumption of legitimacy. (See *State* v. *Industrial Acc. Com.* (1957), 48 Cal.2d 355, 364 [310 P.2d 1], for a statement to this effect.) Also, this presumption would seem reinforced by the fact that the Uniform Civil Liability for Support Act *and* the amendment to section 195 of the Civil Code were both enacted in 1955; therefore, it may be logically inferred from the Legislature's failure to provide that a state may contest legitimacy for purposes of the Support Act and its expressly limiting the extension of persons who may dispute the presumption of legitimacy to include the state in criminal actions prosecuted under section 270 of the Penal Code, which takes care of the *In re Madalina* fact situation, that was just as far as the Legislature intended to go. Consequently, until illegitimacy is established, the child could not be an obligee under the definition given in section 241 of the Civil Code. Until such status is shown, the child remains the obligee of the one whom the law presumes to be his natural father.

For the reasons stated the judgment should be and it is affirmed.

Bray, Acting P. J., and Wood (Fred B.), J., concurred.