[Civ. No. 31688.   Second Dist., Div. Two.   Sept. 10, 1968.]

N. N. SUGARMAN et al., Plaintiffs, Cross-defendants and Appellants, v. FEDERAL INSURANCE COMPANY, Defendant, Cross-complainant and Respondent; ERNEST E. WEBB, as Director of Industrial Relations, et al., Defendants, Cross-defendants and Respondents.

David L. Sefman and David Turner for Plaintiffs, Cross-defendants and Appellants.

Clopton & Penny and Mort L. Clopton for Defendant Cross-complainant and Respondent.

Thomas C. Lynch, Attorney General, and Edward M. Belasco, Deputy Attorney General, for Defendants, Cross-defendants and Respondents.

HERNDON, J.—This is an appeal from a judgment declaring that appellants as the successors to Walker Mining Company are the owners of certain stocks and cash presently held by respondent Federal Insurance Company, but that appellants are not presently entitled to delivery of this property because it serves as collateral to offset all liability for workmen's compensation claims to which Federal may be exposed by virtue of a guaranty bond which its predecessor had furnished Director of Industrial Relations to enable Walker Mining Company to operate as a self-insured employer.

Appellants' complaint against respondent Federal sought delivery of the bonds and cash and a declaration by the court that Federal has no further reason to retain possession of this collateral. Federal filed an answer and cross-complaint asserting, in essence, that it should be permitted to retain its security unless it be judicially determined that it would never be liable thereafter by reason of its status as surety upon the guaranty bond.

The respondent Director of Industrial Relations answered the complaint and the cross-complaint and asserted that Federal should not be declared free of future liability. We have concluded that the declaration made by the trial court was correct and sufficient to decide all of the issues presented.

The determinative facts are not in dispute. Walker Mining Company was engaged in mining operations and was a self-

insured employer under the California Workmen's Compensation Law from February 1937, to January 1943. United States Guarantee Company, respondent Federal's predecessor in interest, was the surety on a guaranty bond effective during this period whereby Walker, as principal, and Guarantee, as surety, bound themselves to the People of the State of California for the benefit of each and all of Walker's employees. This bond provided, inter alia, that in the event Walker became insolvent Guarantee would pay any award made in favor of its employees. In consideration for Guarantee's assumption of suretyship liability, Walker executed an indemnity agreement and delivered certain securities to Guarantee to be held by it as collateral. This agreement provided for the return of the collateral securities ". . . if said Indemnitor [Walker] shall furnish said Surety [Guarantee] with competent written legal evidence of its discharge from said suretyship and from all liability by reason thereof . . ."

Walker's mining operations were shut down in October of 1941, and it was adjudicated a bankrupt in September of 1945. By orders of the bankruptcy court appellants have acquired the assets of Walker, including the collateral given to Guarantee. Federal has succeeded to the rights and obligations of Guarantee. Throughout the years and up to July 27, 1966, Guarantee and its successor, Federal, have incurred losses, costs and expenses totaling $22,295.74, arising out of eighteen claims of industrial injury occurring during the term of the bond. Of this number, four were filed in the Industrial Accident Commission in 1960, one was filed in 1961, and the most recent known claim was filed May 29, 1964. The former employees of Walker are so numerous as to make their joinder as parties to this action impracticable and their identities and whereabouts are not known or ascertainable. Therefore, the People of the State of California and Ernest E. Webb as Director of Industrial Relations of the State of California appeared in a representative capacity on behalf of themselves and each and all of Walker's employees.

The instant action was tried upon a written stipulation of facts and exhibits attached thereto. These indicate that as of July 27, 1966, Federal has been fully reimbursed for all losses, costs, expenses and attorneys' fees incurred to that date by reason of the suretyship bond. At that time no other claims under the Workmen's Compensation Law were known to be pending against Walker.

Appellants argue that despite the clear language of Walk-

er's agreement relating to the release of the collateral deposited with it, nevertheless the collateral should have been ordered returned since Federal and the Director of Industrial Relations failed to prove that any further claims will be filed by Walker's former employees. This argument fails to recognize that the burden does not rest upon respondents to demonstrate which, if any, of Walker's employees may yet be disabled as the result of an occupational disease in which his employment with Walker was a contributing factor. (Cf. Lab. Code, §§ 5412, 5500.5.) Appellants' right to the collateral will not mature until *it* provides "legal evidence of [Federal's] discharge from said suretyship and from all liability by reason thereof."

The trial court properly construed the bond involved herein to impose liability upon Federal to answer for all claims that may hereafter be filed against it by former Walker employees and to respond·to all actions for apportionment which may hereafter be filed against it by employers who will have been ordered to pay full compensation to an employee who suffered disability to which his former employment with Walker was a contributing factor. The revocation of Walker's Certificate of Consent to Self-Insure in 1943 had no effect upon the liability of Walker and Guarantee to those employed in previous years.

California's courts and Legislature have long recognized that persons working in and about mines are likely to become victims of pneumonconiosis, an occupational disease commonly termed silicosis. (*Globe Indem. Co.* v. *Industrial Acc. Com.*, 125 Cal.App.2d 763 [271 P.2d 149].) Silicosis may develop over a long period of time and the time element is relevant only in establishing employer liability, since all employments which have contributed to the silicosis suffered by the employee serve as a basis for liability to contribute to his compensation. (*Colonial Ins. Co.* v. *Industrial Acc. Com.*, 29 Cal.2d 79 [172 P.2d 884] ; *Marsh* v. *Industrial Acc. Com.*, 217 Cal. 338 [18 P.2d 933, 86 A.L.R. 563] ; *Argonaut Min. Co.* v. *Industrial Acc. Com.*, 21 Cal.App.2d 492 [70 P.2d 216].) In *State of California* v. *Industrial Acc. Com.*, 49 Cal.2d 354, 355 [317 P.2d 8], an apportionment award under Labor Code section 5500.5 was upheld where the employee "became permanently totally disabled from silicosis suffered as the result of successive employments over a period of *some 40 years*." (Italics added.)

It is self-evident that damages may yet be incurred by Federal despite the fact that Walker ceased operations in

1941. It follows that the trial court properly refused to declare it discharged from liability to Walker's former employees. Similarly, appellants are not entitled to receive the security on deposit with Federal since the possibility of insolvency was the primary reason for the required posting of securities by a self-insurer. (*Pacific Employers Ins. Co.* v. *Industrial Acc. Com.*, 219 Cal.App.2d 634, 644 [33 Cal.Rptr. 442].)

Finally, appellants contend that the trial court erred in declaring that Federal might retain its collateral "until such time as all its liability and all its potential liability as surety on and under said bond . . . shall have been discharged, satisfied, and exonerated." It asserts that the court should have fixed a date certain when such a condition will necessarily have occurred. The limited declaration was proper.

Initially, it should be observed that there was absolutely no evidence presented to the trial court which would have permitted it to undertake such a prescient determination. ■ More importantly, however, it is the function of an action in declaratory relief to determine the rights and duties of the parties upon an existing state of facts although this may include, where necessary, a declaration of contingent future rights. It is not its function, however, to declare in advance the earliest possible date upon which an indefinite future event must necessarily occur.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.